## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IDALIA VILLARREAL-DANCY<br>4310 McLean Place<br>Anchorage, AK 99504<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>THE AIR FORCE; MATTHEW P. DONOVAN,<br>Acting Secretary of the Air Force; SHON J.<br>MANASCO, Assistant Secretary of the Air Force<br>for Manpower and Reserve Affairs<br>1690 Air Force Pentagon<br>Washington, DC 20330<br><br>*Defendants*. | Civil Action No. 1:19-cv-02985 |

## COMPLAINT

Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. ("APA") and the

Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, Plaintiff Idalia Villarreal-Dancy brings this

action for declaratory and injunctive relief against Defendants the U.S. Department of the Air

Force; Matthew P. Donovan, in his official capacity as Acting Secretary of the Air Force; and Shon

J. Manasco, in his official capacity as Assistant Secretary of the Air Force for Manpower and

Reserve Affairs (collectively "Air Force").

On July 7, 2015, Mrs. Villarreal-Dancy, a military veteran, applied to the Air Force to

upgrade the status of her discharge from service.  Although the Air Force's Psychiatric Advisor

and the Air Force Board for Correction of Military Records ("Board") recommended that Mrs.

Villarreal-Dancy's request be granted in part, the Air Force nevertheless denied the request on

December 8, 2017.  This suit seeks judicial review of the Air Force's decision.

The Air Force's decisions concerning discharge-upgrade requests "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1402 (D.C. Cir. 1995). Here, the Air Force's ruling on Mrs. Villarreal-Dancy's discharge-upgrade application fails the "basic procedural requiremen[t] . . . that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Specifically, the Air Force's decision overrides the Board's thorough and well-supported recommendation, is internally inconsistent, and fails to grapple with key record evidence.

Mrs. Villarreal-Dancy accordingly requests that the Court (1) declare that the Air Force's decision is arbitrary and capricious, and (2) set aside the decision and remand for further consideration of Mrs. Villarreal-Dancy's discharge-upgrade request. In support, Mrs. Villarreal-Dancy alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201-2202, and may hear this action pursuant to the APA, 5 U.S.C. §§ 701–06, because Mrs. Villarreal-Dancy seeks review of final agency action for which there is no other adequate remedy.

2.     Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia and a substantial part of the events giving rise to the claim occurred in the District of Columbia.

## PARTIES

3.     Plaintiff Idalia Villarreal-Dancy is an Air Force veteran. She is a citizen of the United States, resides in Alaska, and served in the Air Force from 1988 to 2000.

4.      Defendant the U.S. Department of the Air Force is one of three service departments in the Department of Defense ("DoD").  It has responsibility for the administration, control, and operation of the United States Air Force, a military organization primarily responsible for aerial and space warfare operations.  The civilian head of the Department of the Air Force is the Secretary of the Air Force.

5.      Defendant Matthew P. Donovan is the Acting Secretary of the Air Force and is named solely in his official capacity.  Mr. Donovan is authorized by statute (10 U.S.C. § 1552) to act through a board of civilians to correct any military record of a former member of the Air Force when doing so is necessary to correct an error or remove an injustice.

6.      Defendant Shon J. Manasco is the Assistant Secretary of the Air Force for Manpower and Reserve Affairs and is named solely in his official capacity.  Mr. Manasco exercises authority delegated by the Secretary of the Air Force to accept or reject recommendations from the Board relating to applications for the correction of military records, including discharge upgrades. Prior to Mr. Manasco's tenure, Daniel R. Sitterly served as Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs.

## STATUTORY AND REGULATORY BACKGROUND

7.      Following World War II, Congress passed and the President signed legislation that provides a mechanism to amend military records where it is "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).

8.      Subject to exceptions not relevant here, "such corrections shall be made by the Secretary [of each military branch] acting through boards of civilians."  10 U.S.C. § 1552(a)(1).

9.      Decisions of these boards are "final" and, "[e]xcept where procured by fraud," are "final and conclusive on all officers of the United States."  10 U.S.C. § 1552(a)(4)-(5); *see also* 32 C.F.R. § 865.4(*l*).

10.      Pursuant to that statutory framework, the Air Force established the Board to consider and act upon correction requests of Air Force service members and veterans.  *See* 32 C.F.R. §§ 865.0-865.3.

11.      Reflecting Congress's desire that veterans with erroneous or unjust records have a real, available remedy, the Board's authority is broad and includes the correction of military records:  (a) to change the reason for discharge to medical separation or retirement; (b) to reinstate a veteran to military service; (c) to recharacterize a veteran's less than fully honorable discharge; (d) to change the basis for a discharge; (e) to void a pass over of a candidate for promotion; (f) to establish eligibility for pay and/or retirement benefits; (g) to increase or change active-duty service time, which in some cases will create eligibility for U.S. Department of Veterans Affairs ("VA") benefits or military retirement; (h) to change adverse line of duty investigations; (i) to remove statutory bars to veterans' benefits; and (j) to take other actions as may be necessary to correct material error or injustice.  10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 865.0.

12.      The Board operates within the Office of the Secretary of the Air Force in accordance with 10 U.S.C. § 1552.  The Board consists of senior Air Force civilians who are appointed and serve at the pleasure of the Secretary of the Air Force.  A panel consisting of at least three board members considers each application, with one member serving as the panel chair.  32 C.F.R. § 865.4(c).

13.      Air Force regulations guide the Board's exercise of its broad discretion.  32 C.F.R. § 865.4.  Among other things, the Board may obtain information from the applicant or "any Air

Force organization or official," and may likewise request advisory opinions from Air Force sources. *Id.* § 865.4(a).

14.     A majority vote of the panel constitutes the action of the Board.  The Board makes determinations for certain issues in writing, such as whether an application was timely filed or whether the applicant has identified an error or injustice that can be remedied through correction of the applicant's military record. *Id.* § 865.4(h).  After the Board votes on an applicant's discharge upgrade request, the panel chairperson signs a Record of Proceedings that explain the reasons for the Board's decision.  The Record of Proceedings contains, among other things, (a) the application, (b) briefs and written arguments, (c) documentary evidence, (d) advisory opinions and the applicant's related comments, (e) the findings, conclusions, and recommendations of the Board, and (f) other information necessary to show a true and complete history of the proceedings. *See* 32 C.F.R. § 865.4(i).

15.     Air Force regulations provide that the Board "acts for the Secretary of the Air Force and its decision is final when," subject to exceptions not relevant here, it (a) denies an application, (b) grants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not affect an appointment or promotion requiring confirmation by the Senate, or (c) it sends the Record of Proceedings to the Secretary of the Air Force or his or her designee for a final decision.  32 C.F.R. § 865.4(*l*).

16.     Guidance issued by the Department of Defense and the Air Force is inconsistent with 10 U.S.C. § 1552 and 32 C.F.R. § 865.4(*l*), and grants the Secretary of the Air Force more authority than federal law provides.  Department of Defense Directive 1332.41, *Boards for Correction of Military Records and Discharge Review Boards* (Mar. 8, 2004), assigns

responsibilities for administering the correction of military records under 10 U.S.C. § 1552.  This directive states that the "Secretaries of the Military Departments have the authority for final decision and the responsibility for the operations of their respective [Boards]."

17.     Air Force Instruction ("AFI") 36-2603 implements DoD Directive 1332.41 and similarly states that "the SAF [Secretary of the Air Force], or the SAF's delegee, will direct such action as the SAF or delegee deems appropriate on each case" and "[i]f the SAF or delegee does not accept the Board's recommendation, the decision will be in writing and will include a brief statement of the grounds for his or her final decision." AFI 36-2603, *Air Force Board for Correction of Military Records*, § 5 (Sept. 18, 2017).

18.     AFI 36-2603 further provides that the Assistant Secretary of the Air Force for Manpower and Reserve Affairs exercises authority delegated by the Secretary of the Air Force to make final decisions concerning applications considered by the Board.  *Id*. § 1.2.  In the Record of Proceedings, the Board includes its recommendation about whether to accept or reject an application.  *Id*. § 4.14.  In most cases, the Board's recommendation is accepted.  *See* Air Force Pamphlet 36-2607.

19.     The Board may reconsider an application if it receives new and relevant evidence that was not reasonably available when the application was previously considered.  However, arguments relating to evidence previously considered or statements "cumulative to those already in the Record of Proceedings will not be considered new evidence."  32 C.F.R. § 865.6.

## FACTUAL BACKGROUND

20.     Mrs. Villarreal-Dancy joined the Air Force on November 16, 1988 and served until July 13, 2000.  Her service included foreign service in Saudi Arabia, Guam, and Spain.

21.     Mrs. Villarreal-Dancy's duties in the Air Force included a broad range of responsibilities, including (1) administering a fitness center at Elmendorf Air Force Base in Alaska, (2) overseeing logistics and budgetary matters for a team of eight enlisted airmen and four civilians at Elmendorf Air Force Base, (3) managing dining facilities at Prince Sultan Air Base in Saudi Arabia, and (4) assisting with Operation Pacific Haven, which ensured a smooth transition for Kurdish refugees coming to the United States, at Anderson Air Force Base in Guam.

22.     Mrs. Villarreal-Dancy joined the Air Force to escape an abusive relationship and troubled childhood.  Air Force and Veterans Administration records indicate that Mrs. Villarreal-Dancy experienced a "traumatic stressor" as a child and "suffered from childhood abuse which led to the development of PTSD [Post-Traumatic Stress Disorder]."  Mrs. Villarreal-Dancy's history of PTSD "le[ft] her more vulnerable to the development of depression," which manifested itself throughout her military career.  A psychological evaluation from 2016 cited by the Board states that Mrs. Villarreal-Dancy's "depression was due to her military exposure" and that she "remains depressed, anxious, suspicious, with chronic sleep impairment, [and] disturbances of motivation and mood."  A true and correct copy of the Psychiatric Advisor's report is attached as **Exhibit A**.

23.     Despite experiencing depression and anxiety while in the Air Force, Mrs. Villarreal-Dancy was frequently recommended for immediate promotion and lauded for her managerial skills.  She reached the rank of Staff Sergeant (E-5) and her records reflect honorable service throughout her twelve-year service career.

24.     Reflecting this history of honorable service, Mrs. Villarreal-Dancy received the Air Force Achievement Medal, the Air Force Commendation Medal, the Air Force Longevity Service Award, the Humanitarian Service Medal, the Air Force Good Conduct Medal, and other awards during her time in the Air Force.

25.     However, while stationed in Alaska, Mrs. Villarreal-Dancy made a mistake.   In September 1998, after a decade of service, she used cocaine while at a bar in Anchorage.

26.     Mrs. Villarreal-Dancy subsequently failed a drug test.   She was charged with unlawful use of cocaine and pled guilty to the charge in December 1998.

27.     On January 28, 1999, Mrs. Villarreal-Dancy's sentence was adjudged.  For her one-time use of cocaine, Mrs. Villarreal-Dancy was sentenced to a Bad Conduct Discharge, forfeiture of all pay and allowances, and reduction in rank from Staff Sergeant (E-5) to Airman Basic (E-1), the lowest available rank of any Air Force servicemember.   According to the Uniform Code of Military Justice, a Bad Conduct Discharge is a punitive discharge that can only be given by a court-martial and restricts separated members from receiving most veterans benefits.  *See* 10 U.S.C. § 858a.

28.     Mrs. Villarreal-Dancy was discharged from the Air Force on July 13, 2000 following a mandatory intra-agency appellate review, which upheld her sentence.

29.     Since Mrs. Villarreal-Dancy's discharge, she has continued to receive treatment for depression and anxiety.  Because of her honorable service, she is eligible for benefits from the VA.

30.     Mrs. Villarreal-Dancy has been rated at 70 percent disability for service-connected depression.   Her symptoms include, but are not limited to, occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood.

31.     While managing her medical conditions, Mrs. Villarreal-Dancy has continued to be a productive member of society and realized many achievements over the past 19 years.   She has raised three children, and has remained gainfully employed since her discharge.   In 2006, Mrs. Villarreal-Dancy graduated from Charter College with an Associate's Degree in Computerized

Accounting and a 3.95 GPA. Mrs. Villarreal-Dancy was a member of the Dean's List during her time as a student at Charter College.

32. Following her discharge, Mrs. Villarreal-Dancy was employed as a Photo Processor and later as a State Administrative Clerk in the Child Support Division of Alaska's Department of Revenue. She began attending Charter College while working as a Car Rental Agent. Her degree in Computerized Accounting enabled her to find employment as a Payroll Clerk for a home care company and as a Payroll Administrative Assistant for the Alaska Inter-Tribal Council.

33. Mrs. Villarreal-Dancy has been a law-abiding citizen since her discharge in 2000. In April 2010, the State of Alaska issued a report indicating "NO CRIMINAL HISTORY RECORDS FOR THIS PERSON," and the Board's order demonstrates that there is "no evidence of any derogatory involvement with any civil authorities in the over 16 years since her discharge." A true and correct copy of the Board's order is attached as **Exhibit B**.

## MRS. VILLARREAL-DANCY'S DISCHARGE-UPGRADE REQUEST

34. In 2015, Mrs. Villarreal-Dancy applied to the Board pro se and requested that her Bad Conduct Discharge be upgraded to a General (under honorable conditions) Discharge and her rank be reinstated to the grade of Staff Sergeant (E-5).

35. In support of this request, Mrs. Villarreal-Dancy explained that the Air Force (1) failed to admit her medical records during the court-martial proceeding and (2) gave inadequate consideration of her strong service prior to the one-time drug use in 2000. Alternatively, Mrs. Villarreal-Dancy argued that revision of her discharge record is warranted in light of her honorable character and achievements since her discharge.

36. In response to Mrs. Villarreal-Dancy's request, the Board obtained an opinion from the Air Force's Psychiatric Advisor, who recommended:

[A] partial change based on the honorable character and notable achievements from the time that [Mrs. Villarreal-Dancy] left the military.  In spite of [Mrs. Villarreal-Dancy's] mental health condition, [she] was able to attend school and receive very high marks in both college and graduate school.  She has continued to live with the core values of the Air Force and therefore it would be unfair to leave her with the stigma of the UOTH [under other than honorable conditions] discharge on her record.  With this in mi[n]d, this psychiatric advisor would like to recommend a change of her discharge to a General under honorable conditions with the narrative reason being by Secretarial Authority. This would then change the separation code to JFF and a Reentry code to 3K.

Ex. A at 2.

37.     The Psychiatric Advisor also addressed Mrs. Villarreal-Dancy's psychiatric treatment for depression and anxiety while in the Air Force.  The Psychiatric Advisor explained that Mrs. Villarreal-Dancy suffered childhood abuse and trauma resulting in PTSD.  Although her PTSD was not service connected, the Psychiatric Advisor stated that it left "her more vulnerable to the development [of] depression[,]" which she experienced while in the Air Force.  Ex. A at 2.

38.     Accordingly, the Psychiatric Advisor recommended that Mrs. Villarreal-Dancy receive a General (under honorable conditions) Discharge, a change in the narrative reason for her separation to "Secretarial Authority," and a reentry code of 3K.  The recommended changes to the narrative reason for her separation and reentry code would modify Mrs. Villarreal-Dancy's DD214, which is a "Certificate of Release or Discharge from Active Duty" that verifies an individual's military service and provides government agencies with information needed to administer federal and state laws that apply to members who separate from the military.  *See* AFI 36-3202, *Certificate of Release or Discharge From Active Duty*, § 3.1 (Dec. 4, 2018).  For instance, the VA and the U.S. Department of Labor use the DD214 to determine eligibility for benefits or unemployment compensation.

39.     A narrative reason for separation of "Secretarial Authority" is a broad category signifying that a member was separated at the convenience of the government, while a reentry

code of 3K is used when no other reentry code (i.e., a code determining an individual's eligibility for reentry into the Air Force) applies or is appropriate.  *See* AFI 36-2606, *Reenlistment and Extension of Enlistment in the United States Air Force*, § 5.12 (July 27, 2017).

### THE BOARD'S ORDER RECOMMENDING THAT MRS. VILLARREAL-DANCY'S REQUEST BE GRANTED IN PART

40.     The Board concurred with the Psychiatric Advisor's assessment and, following executive sessions on May 19, 2016 and January 3, 2017, issued an order recommending that Mrs. Villarreal-Dancy's request be granted in part.  Ex. B at 6.

41.     As relevant here, the Board found that Mrs. Villarreal-Dancy "exhausted all remedies provided by existing law or regulations" and that "sufficient relevant evidence has been presented to warrant partial relief."  *Id*. at 4-5.  Although the Board concluded that Mrs. Villarreal-Dancy's discharge was appropriate at the time it was issued, the Board also explained that its "consideration . . . is not limited to the events which precipitated the discharge" and that "[it] may base [its] decision on matters of equity and justice."  *Id*. at 5.

42.     The Board's order describes the considerable body of evidence reviewed by the Board in reaching its decision.  Among other things, the Board scrutinized Mrs. Villarreal-Dancy's service records, a letter from Mrs. Villarreal-Dancy discussing her "honorable character and notable achievements," letters from others attesting to her character, records describing her gainful employment for the 16-year period since her discharge, her academic record, and accounts of Mrs. Villarreal-Dancy's contributions to the community, such as volunteering at her children's school.

43.     The Board's order concludes that "based on a  totality of the evidence" and Mrs. Villarreal-Dancy's "successfu[l] transitio[n] to civilian life," "it would be unjust for her to continue to endure the effects of the stigma that is attached to a [Bad Conduct Discharge]."  *Id*.  Although the Board found that an upgrade to fully honorable discharge was not warranted, it nevertheless

determined that the Bad Conduct Discharge "no longer serves a useful purpose" and that "the interest of justice can best be served by removing this blemish [of a Bad Conduct Discharge] from her life and upgrading her discharge to general (under honorable conditions)." *Id.*

44.     The Board's order therefore recommends that Mrs. Villarreal-Dancy's records be corrected to indicate that on July 13, 2000, she was discharged with service characterized as general (under honorable conditions), with a reentry code of 3K and a narrative reason for separation of "Secretarial Authority." *Id*. at 5-6.

## THE ACTING ASSISTANT SECRETARY OVERRIDES THE BOARD'S ORDER AND DENIES MRS. VILLARREAL-DANCY'S REQUEST

45.     Despite the Board's order recommending that Mrs. Villarreal-Dancy's discharge-status upgrade request be granted in part, and despite federal law directing that the Air Force "shall" make its decisions on such requests "through boards of civilians" whose orders are "final," 10 U.S.C. § 1552(a); 32 C.F.R. 865.4(*l*), the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs issued a one-page letter on October 16, 2017 purporting to deny Mrs. Villarreal-Dancy's request.  A true and correct copy of this letter is attached as **Exhibit C**.

46.     In the letter, Daniel R. Sitterly, the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs at the time, indicated that he "d[id] not agree with the recommendation of the Board to upgrade [Mrs. Villarreal-Dancy's] bad conduct discharge."  Ex. C at 1.

47.     The letter is only three paragraphs long.  The first paragraph consists of a single sentence indicating the Acting Assistant Secretary's conclusion.  The second paragraph briefly summarizes the Board's review and conclusions.  The third paragraph presents the entirety of the Acting Assistant Secretary's reasoning.  That reasoning and the Air Force's action taken as a result of it constitutes the final agency action challenged in this litigation.

48.     The third and final paragraph of the Acting Assistant Secretary's letter states in full:

> I believe the panel's recommendation is inconsistent with Board actions in similar cases. Specifically, in the relatively few cases where the Board recommended upgrading a BCD [Bad Conduct Discharge], a punitive discharge which is the result of a criminal conviction, the applicants in those cases provided evidence of sustained contributions to their community in the many years since their punitive discharge.  Most of the character based evidence provided by the applicant relates to her accomplishments prior to her 1998 court-martial.  While I congratulate the applicant on a successful post-service transition, the fact remains she received a punitive discharge as a result of a general court-martial conviction for drug abuse.  Contrary to the Board's recommendation, I do not believe the evidence in this case is sufficient to conclude the applicant's post-service activities are so meritorious that her BCD should be upgraded on the basis of clemency.  Therefore, I deny the applicant's requests.  *Id.*

49.     On December 8, 2017, the Board sent Mrs. Villarreal-Dancy a letter informing her that her application "was denied."  A true and correct copy of this letter is attached as **Exhibit D**. In the letter, the Board stated that it had recommended a correction to Mrs. Villarreal-Dancy's military records, but the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, "did not concur with the recommendation of the Board and determined the evidence you presented was not sufficient to conclude your post-service activities are so meritorious that your BCD should be upgraded on the basis of clemency." Ex. D.

50.     On November 16, 2017, the Senate confirmed Defendant Shon J. Manasco to succeed Mr. Sitterly, whose October 16, 2017 letter rejected the Board's findings and denied Mrs. Villarreal-Dancy's request.  Mr. Manasco was sworn in as the Assistant Secretary of the Air Force for Manpower and Reserve Affairs on December 4, 2017.

## CLARIFYING GUIDANCE TO BOARD REGARDING EQUITY, INJUSTICE, OR CLEMENCY DETERMINATIONS

51.     On July 25, 2018, then Under Secretary of Defense Robert Wilkie issued guidance to the Board in order to clarify and assist with determinations involving equity, injustice, or clemency ("the Wilkie Memo").  The Wilkie Memo centers around ideas of fairness and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which individuals have paid for their misdeeds."  The Memo further instructs the Board that "[r]elief should not be reserved only for those with exceptional aptitude; rather character and rehabilitation should weigh more heavily than achievement alone."  Finally, the Wilkie Memo includes a list of factors the Board should consider when applicable, including an applicant's "acceptance of responsibility, remorse, or atonement for misconduct," post-discharge conduct, and whether the misconduct may have been a "youthful indiscretion."

52.     In addition, the Wilkie Memo instructs the Board to give "appropriate consideration" to service members with past criminal convictions.  In particular, the Wilkie Memo notes "[i]ncreasing attention is being paid to pardons for criminal convictions and the circumstances under which citizens should be considered for second chances and the restoration of rights forfeited as a result of such convictions."

53.     The Wilkie Memo is the fourth document issued in a series of interpretive memoranda that provided clarification to the Board with respect to the review of discharge-upgrade applications filed by veterans with mental health conditions or who are survivors of sexual trauma (including sexual assault or sexual harassment).  These memoranda apply to veterans who received less-than-honorable discharges as a result of misconduct, including Bad Conduct Discharges.

54.     The first of the four memoranda was issued by then Secretary of Defense, Chuck Hagel, on September 3, 2014 (the "Hagel Memo").  The Hagel Memo provides for "special consideration" to be given to VA  determinations that document PTSD or PTSD-related conditions connected to military service.  The Hagel Memo further states that "liberal consideration" will be given to petitions in which military medical records document one or more symptoms of PTSD or related conditions.  Under this policy, the Board was required to consider PTSD or PTSD-related conditions as a mitigating factor in the misconduct that caused the less-than-honorable discharge.

55.     On February 24, 2016, Brad Carson, the then-acting Under Secretary of Defense, issued a second interpretative memo (the "Carson Memo") which, among other things, directed the Board to waive the imposition of the statute of limitations in cases where veterans claim PTSD or PTSD-related conditions.  The Carson Memo further provides that any previously considered case that was reviewed without the benefit of the application of the interpretive guidance of the Hagel Memo be granted de novo review utilizing such interpretive guidance.

56.     Further expanding the guidance set forth in the Hagel and Carson Memos, then Under Secretary of Defense for Personnel and Readiness, Anthony Kurta, issued a memorandum on August 25, 2017 (the "Kurta Memo") providing clarification that the previously issued interpretative guidance should benefit not only those veterans who suffer from PTSD and related conditions, but also any other mental health condition.  The Kurta Memo acknowledges that a "veteran's testimony alone . . . may establish the existence of a condition or experience."  The Kurta Memo reminds the Board that misconduct itself may be evidence of a mental health condition, and further states that liberal interpretation is appropriate for all discharge characterizations, not just other-than-honorable discharges, and that liberal consideration is appropriate for requests to change the narrative reason for separation, separation code, and re-

enlistment code.  Significantly, the Kurta Memo makes clear that an honorable discharge does not require flawless service.

## FIRST CLAIM FOR RELIEF
### Violation of APA – Action in Excess of Statutory Authority

57.     The above paragraphs are incorporated herein by reference.

58.     The Air Force's decision denying Mrs. Villarreal-Dancy's request to upgrade the status of her discharge from service constitutes final agency action for which no other remedy is available.  *See* 5 U.S.C. § 704.

59.     The APA provides that a reviewing court "shall … hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).

60.     The Air Force's decision is unlawful when judged against that standard.

61.     Federal law mandates that, subject to exceptions not relevant here, corrections to military service records "shall be made by the Secretary [of a service branch] acting through boards of civilians of the executive part of that military department."  10 U.S.C. § 1552(a)(1).  The Board exercises that authority with respect to Air Force service records, *see* 32 C.F.R. § 865.1, and is charged by statute with making "determination[s]" regarding correction requests that are "final and conclusive on all officers of the United States."  10 U.S.C. § 1552(a)(3), (a)(4)-(5).

62.     Federal law therefore dictates that the Board, rather than the Assistant Secretary of the Air Force for Manpower and Reserve Affairs (or any other Air Force official), is the body authorized by law to resolve discharge-upgrade requests, including the request submitted by Mrs. Villarreal-Dancy here.  To the extent DoD and Air Force directives conflict with that requirement, the directives are contrary to federal law.

63. The Board's order recommending that Mrs. Villarreal-Dancy's request be granted in part therefore is the operative decision of the Air Force. Because that decision was not procured through fraud, it is "final and conclusive on all officers of the United States." 10 U.S.C. § 1552(a)(4).

64. The Air Force's own regulations indicate that the Board "act[ed] for the Secretary of the Air Force" and that the Board's order here was "final," because the Board granted in part Mrs. Villarreal-Dancy's request in part and, on information and belief, the other requirements of 32 C.F.R. § 865.4(*l*)(2)-(3) are satisfied in this case.

65. To the extent the Air Force's regulations or other guidance issued by the Air Force purports to authorize the Assistant Secretary for Manpower and Reserve Affairs to override the Board's order, those regulations or guidance are inconsistent with 10 U.S.C. § 1552 and 32 C.F.R. § 865.4, and therefore inoperative as applied to the circumstances of this case.

66. The Acting Assistant Secretary's October 16, 2017 letter purporting to override the Board's order, and all further action taken by the Air Force in connection with that letter, therefore exceeded the Air Force's statutory authority and was not in accordance with law. *See* 5 U.S.C. § 706(2).

### SECOND CLAIM FOR RELIEF
Violation of APA – Arbitrary and Capricious Agency Action

67. The above paragraphs are incorporated herein by reference.

68. "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). Under that standard, agency action is unlawful if the agency failed to articulate a rational connection between the facts found and the choice made, failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the

evidence. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agencies therefore must "t[ake] a 'hard look' at all relevant issues and conside[r] reasonable alternatives to its decided course of action." *Neighborhood TV Co. v. FCC*, 742 F.2d 629, 639 (D.C. Cir. 1984).

69.     The Air Force's decision is unlawful when judged against that standard, for several independent reasons.

70.     *First*, the Acting Assistant Secretary's letter fails to provide a reasoned explanation for the action taken. Although the letter expresses disagreement with the Board's conclusion that Mrs. Villarreal-Dancy's post-discharge accomplishments are sufficient to warrant an upgrade, the letter provides no reasoning whatsoever regarding *why* that is so. *See* Ex. C at 1.

71.     *Second*, the Acting Assistant Secretary's basis for disagreeing with the Board's recommendation is arbitrary and capricious.

72.     The sole reason given by the Acting Assistant Secretary is that, where a Bad Conduct Discharge has been upgraded, the applicant "provided evidence of sustained contributions to their community in the many years since their punitive discharge." Ex. C at 1. According to the Acting Assistant Secretary, Mrs. Villarreal-Dancy failed to meet that standard because "[m]ost of the character based evidence [she] provided … relates to her accomplishments prior to her 1998 court-martial." *Id.*

73.     That conclusion is inconsistent with the record. The Board's order lists significant post-discharge evidence submitted by Mrs. Villarreal-Dancy and considered by the Board, including her obtaining a degree in Computerized Accounting in 2006, her "gainful employment" since 2000, an award her "volunteer work" received in 2007, the absence of "evidence of . . . derogatory involvement with any civil authorities in the over 16 years since her discharge," and

other evidence of her "honorable character and notable achievements *since leaving the military*." Ex. B at 4-5. (emphasis added).  In addition to these materials, the record also includes five letters authored by former Air Force colleagues, friends, and a sibling that describe Mrs. Villarreal-Dancy's work ethic, good moral character, and status as a pillar in her community while she was in the military and during the 16 years since her discharge.  The Air Force's decision therefore fails to articulate "a rational connection between the facts found and the choice made" and offers "an explanation for its decision that runs counter to the evidence."  *State Farm*, 463 U.S. at 43.

74.     The Acting Assistant Secretary's conclusion is also inconsistent with the preceding paragraph of the Acting Assistant Secretary's letter, which lists numerous materials that address Mrs. Villarreal-Dancy's post-discharge conduct, including a "personal letter describing her honorable character and achievements *in the 16 years since her discharge*," a 2010 criminal-history report showing that she has remained a law-abiding citizen, a 2011 toxicology report showing that she has been drug-free, and other materials.  *Id.* (emphasis added).  Indeed, the letter acknowledges that Mrs. Villarreal-Dancy has completed "a successful post-service transition."  *Id.* Such internally inconsistent agency action is by definition arbitrary and capricious.  *See, e.g., Bus. Roundtable v. SEC*, 647 F.3d 1144, 1153 (D.C. Cir. 2011) (vacating rule that was "internally inconsistent and therefore arbitrary"); *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987) ("Because the ICC's analysis . . . is internally inconsistent and inadequately explained, we find its ultimate conclusion . . . to be arbitrary and capricious.").

75.     Moreover, the Acting Assistant Secretary's decision is arbitrary and capricious because it is limited to a determination as to whether Mrs. Villarreal-Dancy post-service activities are sufficient to require a discharge upgrade.  However, the Board made its findings under the general standard of "clemency," which is an act of leniency that reduces the severity of the

punishment imposed.  The Board thus made its findings based on the totality of the evidence including post-service activities and found that the Bad Conduct Discharge "no longer serves a useful purpose" and that "it would be unjust for her to continue to endure the effects of the stigma that is attached to a [Bad Conduct Discharge]."  Even if Mrs. Villarreal-Dancy's post-service activities are insufficient to warrant an upgrade, relief is still appropriate under clemency when the punishment no longer serves it purpose.

76.     Finally, the Acting Assistant Secretary's decision is arbitrary and capricious because it fails to follow the clarifying guidance outlined in the Wilkie, Hagel, Carson, and Kurta memoranda, described above.  These memoranda outline a process under which the Board and Service Secretaries must give appropriate consideration to factors including mental health diagnoses and unfair disparities in punishments as a basis for relief.  The intent and purpose of the clarifying memoranda is lost when the Service Secretary or their designee does not follow the same guidance.  By ignoring the memoranda, the Acting Assistant Secretary applies a higher standard for relief than applicable DoD policy.

### **THIRD CLAIM FOR RELIEF**
Violation of APA – Failure to Provide a Reasoned Basis for Departing from the Board's Order and the Psychiatric Advisor's Recommendation

77.     The above paragraphs are incorporated herein by reference.

78.     In addition to, and apart from, the errors described above, the Air Force's decision must also be set aside because the Acting Assistant Secretary failed to provide an adequate basis for rejecting the recommendations of the Board and the Air Force's Psychiatric Advisor.  *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496 (1951); *Flannery v. SEC*, 810 F.3d 1, 9 (1st Cir. 2015); *Tenneco Auto., Inc. v. NLRB*, 716 F.3d 640, 647 (D.C. Cir. 2013).

79.     The Acting Assistant Secretary failed to address the Board's conclusions that Mrs. Villarreal-Dancy's "service characterization" and "RE and separation codes no longer serv[e] a useful purpose," and that "it would be unjust for her to continue to endure the effects of the stigma that is attached to a [Bad Conduct Discharge]."  Ex. B at 5.

80.     The Acting Assistant Secretary likewise failed to address the Psychiatric Advisor's assessment of Mrs. Villarreal-Dancy, including the Advisor's conclusion that she has "continued to live with the core values of the Air Force," Ex. A at 3, and the Advisor's recommendation that she be granted relief in view of her "honorable character and notable achievements since leaving the military."  Ex. B at 4.

81.     As a result of these omissions, the Acting Assistant Secretary "failed to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, and issued a decision that is unsupported by the "whole record," as precedent requires, *Tenneco Automotive*, 716 F.3d at 647.

## **RELIEF REQUESTED**

WHEREFORE, Mrs. Villarreal-Dancy respectfully requests that this Court issue judgment in her favor and against Defendants, and grant the following relief:

A.  Vacate the Air Force's denial of Mrs. Villarreal-Dancy's application for a discharge upgrade;

B.  Declare that the Air Force's decision to reject her application exceeded the Air Force's statutory authority;

C.  Declare that the Air Force's decision to reject her application was arbitrary, capricious, and contrary to law;

D.  Remand for further proceedings to correct errors identified above;

E.  Grant Mrs. Villarreal-Dancy reasonable attorney's fees and expenses pursuant to 28 U.S.C. § 2412; and

F.  Award such further relief as this Court deems just and proper.

Respectfully submitted,

_____/s/ Kevin King_____
Kevin King (D.C. Bar No. 1012403)
Weiss Nusraty (D.C. Bar No. 1035632)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000
kking@cov.com
wnusraty@cov.com

Barton F. Sitchman
Rochelle Bobroff
David Sonenshine
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1600 K Street NW, Suite 500
Washington, DC 20006
(202) 621-5677
bart@nvlsp.org
rochelle@nvlsp.org
david@nvlsp.org

October 3, 2019                          *Attorneys for Plaintiff*