**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

IDALIA VILLARREAL-DANCY,

      *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF THE
AIR FORCE *et al.*,

      *Defendants.*

Civil Action No. 19-2985 (RDM)

---

## MEMORANDUM OPINION AND ORDER

Plaintiff Idalia Villarreal-Dancy served more than ten years in the Air Force.  During her time in the military, she amassed an impressive record, receiving numerous medals and other awards.  In 2000, however, Plaintiff failed a drug test and, following a military trial, was given a punitive Bad Conduct Discharge.  Thereafter, Plaintiff rebuilt her civilian life—earning an associate degree, raising three children, and volunteering in her community.  But her discharge was still "an open wound."  Dkt. 29-1 at 77.  So, in 2015, Plaintiff asked the Air Force to upgrade her discharge classification to honorable, in part based on her "successful post-service transition."  *Id.* at 3.

Federal law permits "[t]he Secretary of a military department [to] correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  Such corrections must "be made by the Secretary acting through boards of civilians."  *Id.*  In Plaintiff's case, the Air Force Board for Correction of Military Records (the "Board") concluded that Plaintiff's discharge should be

upgraded, based on her "honorable character and notable achievements" since leaving the military.  Dkt. 29-1 at 12.  But the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs, acting on behalf of the Secretary, overruled the Board and denied Plaintiff's application.  *Id.* at 3.

Plaintiff filed this lawsuit against the U.S. Department of the Air Force, the Secretary of the Air Force, and the Assistant Secretary of the Air Force for Manpower and Reserve Affairs[1] (collectively, "Defendants") to challenge the denial of her application under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Plaintiff argues that the Acting Assistant Secretary lacked authority, under the governing statute and regulations, to reverse the Board's decision. The Court concludes that the statute gives the Secretary (or his statutorily authorized delegee) the power to overrule the Board.  But the parties' arguments on the regulatory question all miss the mark, and the Court cannot determine from the present record whether the Acting Assistant Secretary had authority—under the relevant regulations and overlapping delegations—to exercise the Secretary's statutory power to review the Board's decision.

The Court will thus **DENY** Plaintiff's motion for summary judgment, Dkt. 21.  That denial will be with prejudice on the statutory question but otherwise without prejudice.  The Court will **GRANT** in part and **DENY** in part Defendants' cross-motion for summary judgment, Dkt. 23.  The motion will be granted on the statutory question but otherwise denied without prejudice.  The Court will **DENY** without prejudice Plaintiff's motion to correct the administrative record, Dkt. 30, which is premature.  Finally, the Court will permit the parties to renew their respective motions, focusing on the questions outlined below.

---

[1]  Under Federal Rule of Civil Procedure 25(d), current Acting Secretary of the Air Force John P. Roth and current Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs John A. Fedrigo are automatically substituted for their predecessors as Defendants.

# I.  BACKGROUND

## A.     Statutory and Regulatory Background

For much of the nation's history, servicemembers seeking to have their military records corrected "were forced to seek private bills in Congress."  *Schwalier v. Panetta*, 839 F. Supp. 2d 75, 82 (D.D.C. 2012), *aff'd sub nom. Schwalier v. Hagel*, 776 F.3d 832 (Fed. Cir. 2015).  Following World War II, Congress faced a "great number of private bills . . . at each session requesting changes in servicemembers' records," *Detweiler v. Pena*, 38 F.3d 591, 597 n.5 (D.C. Cir. 1994) (internal quotation marks and citation omitted), and legislators sought to "relieve [themselves] of the burden of considering private bills to correct alleged errors and injustices in the military system," *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (internal quotation marks and citation omitted); *see also* 41 U.S. Op. Atty. Gen. 71 (1951).  Through the Legislative Reorganization Act of 1946, Congress created an administrative process for the secretaries of the military departments, acting through "boards of civilian officers or employees," to correct military records.  Pub. L. No. 79-601, § 207, 60 Stat. 812, 837 (1946).  "Concerned that service members returning to civilian life after World War II might be handicapped by bad military records created without due process in the hurly-burly of the war, and that career military officials would not be much interested in effecting corrections, Congress required the service secretaries to act through boards of civilians."  *Strand*, 951 F.3d at 1351 (internal quotation marks and citation omitted).

In its current form, the statute provides that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  With a limited exception for certain "favorable" corrections not relevant here, *id.* § 1552(a)(2), "such

corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." *Id.* § 1552(a)(1). Such boards operate "under procedures established by the Secretary" of the relevant military Department. *Id.* § 1552(a)(3)(A). Either a claimant or the relevant Secretary may file a request for correction with the Board. *Id.* § 1552(b).

The Air Force has promulgated regulations establishing the Board and "defin[ing] the Board's authority to act on applications." 32 C.F.R. § 865.0. The Board's membership consists of "civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force." *Id.* § 865.1. The Board sits in panels of at least three members to consider each application, with one member serving as the panel chair. *Id.* § 865.4(c). "The panel's majority vote constitutes the action of the Board." *Id.* § 865.4(h).

Under the regulations, the Board's decision represents the agency's final action in certain circumstances, while other Board decisions are reviewed by the Secretary. *Id.* § 865.4(*l*). "The Board acts for the Secretary of the Air Force and its decision is final when" the Board "[d]enies any application," other than an application related to whistleblower retaliation. *Id.* § 865.4(*l*)(1). The Board also acts for the Secretary in rendering a final decision when it "[g]rants any application in whole or in part" if the relief granted (1) "was recommended by the official preparing the advisory opinion;" (2) "was unanimously agreed to by the panel;" (3) "does not affect an appointment or promotion requiring confirmation by the Senate;" and (4) "does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision." *Id.* § 865.4(*l*)(2). As to "all other applications," the Board instead "sends the record of proceedings . . . to the Secretary of the Air Force or his or her designee for final decision." *Id.* § 865.4(*l*)(3). When the Secretary

4

reviews a case, he or she "may direct such action as he or she deems appropriate . . . , including returning the case to the Board for further consideration." *Id.* § 865.5(a). "If the Secretary does not accept the Board's recommendation, the Secretary's decision will be in writing and will include a brief statement of the grounds for his/her final decision." *Id.*

More broadly, the Secretary of the Air Force "is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Air Force." 10 U.S.C. § 9013(b). And the Secretary "may assign such of his functions, powers, and duties as he considers appropriate to the Under Secretary of the Air Force and to the Assistant Secretaries of the Air Force." 10 U.S.C. § 9013(f). The Secretary has delegated his authority to review Board decisions, including some decisions that 32 C.F.R. § 865.4(*l*) treats as "final," to his subordinates. Specifically, in Headquarters Air Force Mission Directive 1-24, as amended on May 25, 2012, the Secretary delegated to the Assistant Secretary of the Air Force for Manpower and Reserve Affairs authority to make a final decision on all Board decisions, except those related to confidential information or security clearances or related to other matters "with respect to which the Secretary of the Air Force has reserved final decision authority." Dkt. 23 at 18.[2] The Directive also prohibits the Assistant Secretary from further delegating the authority "to deny an application for correction of military records when correction has been recommended by unanimous or majority vote of a panel of the Board." *Id.* at 18–19. In 2017, because of a vacancy in the Assistant Secretary position, the Acting Secretary of the Air Force at the time, Lisa S. Disbrow, issued a

---

[2] The administrative record does not include the cited 2012 version of Headquarters Air Force Mission Directive 1-24, and the version available on the Air Force website appears to have been amended in 2019 and includes slightly different language than what is quoted in Defendants' briefs. *See* Headquarters Air Force Mission Directive 1-24 (Jan. 28, 2019), https://static.e-publishing.af.mil/production/1/saf_mr/publication/hafmd1-24/hafmd1-24.pdf. The differences, however, do not appear to be material.

memorandum that "temporarily delegated to the Principal Deputy Assistant Secretary of the Air Force for Manpower and Reserve Affairs . . . [a]uthority to make a final decision on all applications to the" Board under § 1552, with the same exceptions as in Headquarters Air Force Mission Directive 1-24. Dkt. 29-1 at 7. The delegation memorandum explained that the temporary delegation "includes authority to grant or deny an application when the opposite action has been recommended by a unanimous vote of a panel of the Board for Correction of Military Records." *Id.*

## B. Factual and Procedural Background

Plaintiff joined the Air Force on November 16, 1988, and served more than ten years. Dkt. 29-1 at 8. During that time, she traversed the globe, usually serving as a recreation specialist on various air bases. She assisted Kurdish refugees as part of Operation Pacific Haven while stationed at Anderson Air Force Base in Guam, *id.* at 57, and provided support to Operation Desert Storm while stationed at Prince Sultan Air Base in Saudi Arabia, *id.* at 58. She was responsible for planning sporting events at Torrejon Air Base in Spain, *id.* at 31, and ran a fitness center at Elmendorf Air Force Base in Alaska, *id.* at 23. Plaintiff "had an almost perfect performance record with no adverse actions and many commendations and awards." *Id.* at 100. Before her discharge, Plaintiff obtained the rank of staff sergeant (E-5), *id.* at 8, and received several medals and other awards, including the Air Force Achievement Medal, Air Force Commendation Medal, Air Force Good Conduct Medal, and Air Force Longevity of Service Award, *id.* at 89.

Around October 2, 1998, Plaintiff "wrongfully used cocaine." *Id.* at 8. She was tried in a General Court-Martial and on December 9, 1998, was sentenced to sixteen days of confinement, a Bad Conduct Discharge, and a reduction in grade to airman basic (E-1). *Id.* Plaintiff was

discharged on July 13, 2000, with a reentry code of 2M, which denotes "[s]erving a sentence or suspended sentence of court-martial; or separated while serving a sentence or suspended sentence of court-martial," and a separation code of JJE, which denotes "Court Martial – Drug Related Reason." *Id.* at 9.

Plaintiff then reentered civilian life and, by all accounts, has done so successfully. In the years following her discharge, she avoided any "derogatory involvement" with the legal system. *Id.* at 12. Plaintiff held jobs as a photo processor and as a customer service agent for a car rental company in the years immediately after she left the military. *Id.* at 76–77. She also worked for the State of Alaska Child Support Division. *Id.* at 76. In 2003, she began work on an associate degree in computer accounting at Charter College. *Id.* at 77. She twice made the dean's list and graduated in 2006, while pregnant with her third child. *Id.* While she was in school, Plaintiff also worked as an administrative assistant for a home healthcare company. *Id.* In addition to these professional activities, Plaintiff raised three children, serving during several periods as a stay-at-home parent, and was a regular volunteer at her children's school in Anchorage. *Id.* at 76–77. The school awarded her a certificate as an "Outstanding Parent Volunteer." *Id.* at 71.

On July 7, 2015, Plaintiff applied pro se to the Board to upgrade her discharge classification to honorable and to restore her rank. *Id.* at 15–16. Plaintiff sought a correction in her records on several grounds. First, she argued that her "discharge was inequitable and unjust" because the Court-Martial did not give sufficient weight to her ten years "of faithful and outstanding" service, in comparison to her solitary infraction. *Id.* at 18. Second, she argued that the Court-Martial proceeding had failed to consider evidence that mental illness, including depression and anxiety related to her military service, contributed to Plaintiff's drug use. *Id.* Third, Plaintiff argued that she should have been afforded an opportunity for rehabilitation and

drug treatment before her discharge. *Id.* And finally, Plaintiff asked the Board to grant relief based on "clemency," including based on her successful reintegration into society following her military career. *Id.* at 18, 20–21; *see also* Dkt. 21-1 at 18. Along with her application, Plaintiff submitted more than sixty pages of exhibits, including five reference letters, her military records, and various documents detailing her post-military life, such as her children's birth certificates and her college diploma. *See* Dkt. 29-1 at 23–87.

In considering Plaintiff's application, the Board received a recommendation from the Air Force Legal Operations Agency's Military Justice Division ("JAJM"), *id.* at 94–96, and also received an advisory opinion from the Board's psychiatric advisor, *id.* at 99–101. JAJM recommended denying Plaintiff's application because she was "afforded all of her procedural due process rights at trial and on appeal" and "because her allegations of error or injustice lack merit and the application is untimely." *Id.* at 95–96. The psychiatric advisor, however, recommended that the Board upgrade Plaintiff's discharge. The advisor explained that, at the time of Plaintiff's court-martial, the fact that she had been diagnosed with depression and anxiety was omitted from the record. *Id.* at 100. "What was also not known at the time," the advisor continued, "was the fact she suffered from childhood abuse which led to the development of [Post Traumatic Stress Disorder]." *Id.* Even so, Plaintiff had been deployed overseas and received glowing performance reviews, which "impl[ies] that her condition was not considered serious enough to interfere with her ability to perform her job." *Id.* In the absence of more detailed medical records, the advisor could not recommend a change to a medical discharge. *Id.* at 101. Still, he recognized Plaintiff's "honorable character and notable achievements from the time that she left the military." *Id.* Because Plaintiff had overcome her mental health conditions to "continue[] to live with the core values of the Air Force," the advisor opined that "it would be

unfair to leave her with the stigma" of her Bad Conduct Discharge. *Id.* The psychiatric advisor thus recommended "a change of her discharge to a General under honorable conditions with the narrative reason being by Secretarial Authority." *Id.*

With these initial evaluations at its disposal, the Board turned to its own consideration of Plaintiff's application. At the threshold, the Board concluded that Plaintiff had exhausted all other remedies and that, although the application was untimely, "it is in the interest of justice to excuse the failure to timely file." *Id.* at 11. Turning to the merits of Plaintiff's application, the Board granted "partial relief." *Id.* at 12. The Board first concluded that Plaintiff had not shown any error or injustice in the court-martial proceeding that would support reinstating her grade to staff sergeant. *Id.* But the Board went on to conclude that "partial relief is warranted on the basis of clemency." *Id.* The Board emphasized Plaintiff's "honorable character and notable achievements in the over 16 years since her discharge, to include gainful employment, volunteer work, and making the Dean's list several times while pursuing her Associates Degree in Computer Science." *Id.* In the Board's view, Plaintiff had "successfully transitioned to civilian life." *Id.* As such, her Bad Conduct Discharge "no longer serves a useful purpose," and "it would be unjust for her to continue to endure the effects of the stigma" associated with such a discharge. *Id.* The Board therefore concluded that Plaintiff's military records should be "corrected to show that on [July 13, 2000], she was discharged with service characterized as general (under honorable conditions)," with a reentry code of 3K, which is used by the Board when no other code is appropriate, and with a "narrative reason for separation of 'Secretarial Authority,' with the corresponding separation code of 'JFF.'" *Id.* at 13.

In a letter dated October 16, 2017, the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs overturned the Board's decision and denied Plaintiff's

application in full.  *Id.* at 3.  After summarizing the Board's reasoning, the Acting Assistant

Secretary provided a one-paragraph justification for his decision:

> I believe the panel's recommendation is inconsistent with Board actions in
> similar cases.  Specifically, in the relatively few cases where the Board
> recommended upgrading a BCD, a punitive discharge which is the result of a
> criminal conviction, the applicants in those cases provided evidence of sustained
> contributions to their community in the many years since their punitive
> discharge.  Most of the character based evidence provided by the applicant
> relates to her accomplishments prior to her 1998 court-martial.  While I
> congratulate the applicant on a successful post-service transition, the fact
> remains she received a punitive discharge as a result of a general court-martial
> conviction for drug abuse.  Contrary to the Board's recommendation, I do not
> believe the evidence in this case is sufficient to conclude the applicant's post-
> service activities are so meritorious that her BCD should be upgraded on the
> basis of clemency.  Therefore, I deny the applicant's requests.  Please notify the
> applicant accordingly.

*Id.*

On October 3, 2019, Plaintiff filed this lawsuit to challenge the Secretary's decision as

unlawful under the APA.  Dkt. 1.  After the Court held a pre-motion conference to clarify the

issues in the case, *see* Minute Entry (Mar. 12, 2020), Plaintiff moved for summary judgment,

Dkt. 21, and Defendants filed a cross-motion, Dkt. 23.  Following the close of briefing on the

motions for summary judgment, Defendants filed the administrative record.  Dkt. 29.  Plaintiff

then filed a motion to correct the administrative record, Dkt. 30, which Defendants opposed, Dkt.

32.  In compiling the administrative record, Defendants included a five-page excerpt of

Plaintiff's military personnel records, but Plaintiff argues that the administrative record should

instead include the full 90-page version of her personnel file.  Briefing on all three motions is

now complete, and the motions are ripe for decision.

## II. LEGAL STANDARD

The APA directs courts to "hold unlawful and set aside agency action" that is "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law," as well as agency

actions taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). In an APA case, summary judgment "serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'" *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (quoting *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019)). In this context, "the district judge sits as an appellate tribunal," and "the entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted).

### III. ANALYSIS

**A.     Statutory Authority**

Plaintiff first argues that "[t]he Air Force exceeded its statutory authority by denying [Plaintiff's] application after the Board had issued its decision finding relief to be warranted in part." Dkt. 21-1 at 27. Plaintiff contends that the statutory requirement that the Secretary "act[] through boards of civilians" to make corrections, 10 U.S.C. § 1552(a)(1), necessarily "forecloses the Secretary from adjudicating such corrections himself." Dkt. 21-1 at 27. This is so, she reasons, because "[t]he Secretary cannot reasonably be understood to have been 'acting through' the Board in correcting the record of [Plaintiff's] discharge by *rejecting* the Board's unanimous determination that her discharge should be corrected." *Id.*

D.C. Circuit precedent forecloses this argument. In *Miller v. Lehman*, 801 F.2d 492 (D.C. Cir. 1986), the Court of Appeals considered whether the Secretary of the Navy violated § 1552 by overruling a records-correction board's recommendation to expunge a servicemember's letter of censure. In analyzing the statutory text, the D.C. Circuit explained that "the Secretary is by no means a cipher in the process of correcting naval records." *Id.* at 497. In

the D.C. Circuit's view, although § 1552(a) "directs the Secretary to act through a civilian board," the provision also "leaves no doubt that the final decision is to be made by him: 'The Secretary of a military department . . . *may* correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice.'" *Id.* (quoting 10 U.S.C. § 1552(a)) (emphasis added by the D.C. Circuit). The D.C. Circuit also emphasized that the Secretary appoints the members of the civilian review boards, who serve at the Secretary's pleasure. *Id.* The court thus held that under the statute, the findings of the Board are not binding on the Secretary. *Id.*

Plaintiff responds by arguing that *Miller* is a dead letter. She contends that "the relevant statutory language has been substantially amended in a way that renders *Miller* no longer controlling." Dkt. 21-1 at 31. The Court is unpersuaded. Although Plaintiff is correct that § 1552 has been amended and expanded in the decades since *Miller*, none of the changes cast doubt on the D.C. Circuit's reasoning in that case. As of 1986, § 1552(a) provided:

> The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice.

10 U.S.C. § 1552(a) (1986). The current version of the statute breaks that language into two sentences and removes the gendered pronouns:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2) [with respect to decisions granting certain favorable corrections], such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1).

But in every material respect, the statute is much the same.  Notably, the text on which the D.C. Circuit principally relied—that the Secretary "*may* correct any military record" in circumstances when he "*considers it necessary* to correct an error or remove an injustice"— remains unchanged.  10 U.S.C. § 1552(a)(1) (emphasis added).  The new phrasing of the statutory text leaves no more doubt than the earlier version about the Secretary's role as the final decision-maker.  *Miller*, 801 F.2d at 497.  Based on the D.C. Circuit's reading, the statutory text as it stands today, every bit as much as the statutory text as it stood back then, unambiguously permits the Secretary to overrule the Board.[3]

Plaintiff's arguments to the contrary are unavailing.  Although Plaintiff emphasizes that the second sentence of the section in its present form provides that the Secretary "shall" act through civilian boards, the former version of the statute, without using that exact word, already "direct[ed] the Secretary to act through a civilian board."  *Miller*, 801 F.2d at 497.  The D.C. Circuit found the statutory requirement that the Secretary act through civilian boards insufficient to bind the Secretary to a board's decisions, and nothing about the addition of the word "shall" to the rephrased provision alters that conclusion.  The Secretary still acts "through" the Board when he takes the Board's recommendation but disagrees with it.  As Defendants contend, on the D.C. Circuit's reading of the statute, § 1552(a)(1) "merely establish[es] a procedural requirement—

---

[3] Because the D.C. Circuit held in *Miller* that the relevant statutory text unambiguously permits the Secretary to overrule the Board's recommendations, the Court need not consider whether, if the statute were ambiguous, the Air Force's interpretation would be subject to deference under *Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *See Strickland v. United States*, 423 F.3d 1335, 1340 (Fed. Cir. 2005) (deferring to "the consistent, continual construction of § 1552 in the applicable regulations of all four service branches," all of which "provide authority for the Secretary to override Board decisions upon following prescribed procedures").

undeniably satisfied here—that a board hear the matter and make a recommended decision." Dkt. 23 at 13.

Plaintiff's further argument that the statute "now emphasizes that the Board can make 'final decision[s],'" Dkt. 21-1 at 31, reads the relevant statutory text out of context.  The portion of the statute that Plaintiff quotes merely states that "[e]ach final decision of a board under this subsection shall be made available to the public in electronic form on a centralized Internet website."  10 U.S.C. § 1552(a)(5).  If Congress had intended to amend the statute to override the D.C. Circuit's decision in *Miller*, it would have done so more clearly than by inserting a passing reference to a "final decision" in a provision requiring the Board to post its decisions online.  In any event, the statute's reference to the "final decision *of a board,*" *id.* (emphasis added), does not mean that the Board's recommendation is necessarily the final decision *of the agency*.  The Board's recommendation may be the final word of the Board, but nothing in the statute prevents the Secretary from reviewing that recommendation and issuing the Air Force's final decision.

Plaintiff's various other textual arguments also run headlong into *Miller*'s unequivocal holding.  For instance, Plaintiff contends that § 1552(a)(4) supports her position, because that provision states that "a correction under this section is final and conclusive on all officers of the United States," 10 U.S.C. § 1552(a)(4)(A), and also refers to a board's authority to "grant a request for an upgrade," *id.* § 1552(a)(4)(B).  As an initial matter, neither of these provisions is inconsistent with the Secretary's review of the Board's decisions.  The fact that a correction under § 1552 is final and conclusive says nothing about the process required to make that correction, and the reference to the Board's authority to grant "an upgrade" does not necessarily preclude review of such a determination by the Secretary.  But whatever weight the Court might place on these statutory clues in the first instance, the Court is not writing on a blank slate.  And

14

nothing in these oblique references to the board's authority in § 1552(a)(4) provides a basis for disregarding the D.C. Circuit's holding in *Miller*.

At bottom, the Court cannot depart from the D.C. Circuit's interpretation of a statute based on amendments that are largely technical and procedural.  To be sure, the reason that "[t]he principle of stare decisis has special force in respect to statutory interpretation" is that "Congress remains free to alter what [courts] have done." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) (internal quotation marks and citations omitted).  At the same time, however, courts "normally assume[] that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).  As such, the Court assumes that when amending § 1552, Congress was aware of the D.C. Circuit's holding that the statute permits the Secretary to second-guess the Board.  If Congress had intended to override that statutory interpretation, it would have done more than slightly reword the relevant statutory text without removing or otherwise qualifying the language on which the Court of Appeals principally relied.  The Court, accordingly, concludes that the Secretary acted within the bounds of his statutory authority in reversing the Board's decision.

## B.    Regulatory Authority

Plaintiff next argues that, even if the statute permits the Secretary to overturn decisions of the Board, Air Force regulations prohibit the Secretary from overturning the Board's unanimous determination in Plaintiff's case.  Dkt. 21-1 at 32.  Under Air Force regulations, "[t]he Board acts for the Secretary of the Air Force and its decision is final" in certain circumstances, whereas "[t]he Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision."  32 C.F.R. § 865.4(*l*).  As relevant here, the Board acts for the Secretary and renders a "final decision" when it "[g]rants any application in

whole or in part," so long as the relief granted (1) "was recommended by the official preparing the advisory opinion," (2) "was unanimously agreed to by the panel," (3) "does not affect an appointment or promotion requiring confirmation by the Senate," and (4) "does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision." *Id.* § 865.4(*l*)(2).

Plaintiff argues, and Defendants do not contest, that the Board granted Plaintiff's application in part, that the psychiatric advisor recommended that relief,[4] that the panel's decision was unanimous, and that upgrading Plaintiff's discharge does not require any action from the Senate. Dkt. 21-1 at 32–33; *see also* Dkt. 23 at 17–19. The parties thus focus their arguments on the final qualifier—whether "the relief . . . affect[s] a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision." 32 C.F.R. § 865(*l*)(2).

Defendants do not argue that the Secretary has explicitly "withheld decision authority" from the Board over any specific class of matters that relate to the relief granted to Plaintiff. Rather, they argue that by delegating his authority to review Board decisions to his subordinates, the Secretary implicitly withheld that authority from the Board. Defendants rely on Headquarters Air Force Mission Directive 1-24, in which the Secretary delegated to the Assistant Secretary of the Air Force for Manpower and Reserve Affairs authority to make a final decision

---

[4] Although the psychiatric advisor recommended granting relief, JAJM recommended denying Plaintiff's application. The regulatory text is unclear as to whether the JAJM recommendation constitutes a separate "advisory opinion" and, if so, whether one supporting advisory opinion is enough to permit the Board to act for the Secretary and to render a final decision, or whether all advisory opinions must unanimously recommend granting relief. In any event, Defendants do not contest that granting relief "was recommended by the official preparing the advisory opinion," *id.* § 865.4(*l*)(2), so they have waived any argument they may have had based on that qualification in the regulation.

on all Board decisions, except those related to security clearances or confidential information or related to other matters "with respect to which the Secretary of the Air Force has reserved final decision authority." Dkt. 23 at 18. That Directive also prohibits the Assistant Secretary from further delegating the authority "to deny an application for correction of military records when correction has been recommended by unanimous or majority vote of a panel of the Board." *Id.* at 18–19. And Defendants also cite the 2017 memorandum from the Acting Secretary that "temporarily delegated to the Principal Deputy Assistant Secretary of the Air Force for Manpower and Reserve Affairs . . . [a]uthority to make a final decision on all applications to the" Board under § 1552, again with the exception of cases involving classified information, security clearances, or other matters as to which the Secretary reserved final decisional authority. Dkt. 29-1 at 7. The delegation memorandum emphasized that the temporary delegation "includes authority to grant or deny an application when the opposite action has been recommended by a unanimous vote of a panel of the Board for Correction of Military Records." *Id.* Defendants argue that, through these delegations, "the Secretary has implicitly withheld [] decisional authority [from the Board], and then parceled it back in subordinate layers of authority." Dkt. 26 at 11–12.

By focusing on whether the Secretary has "withheld decision authority" within the meaning of the regulation, the parties' arguments about how to interpret 32 C.F.R. § 865(*l*)(2) miss a potentially significant constitutional problem with Plaintiff's preferred reading. (In fairness to the parties, the Supreme Court case that tees up that constitutional question was decided only recently, after the parties had finished briefing the pending motions.) Plaintiff contends that the regulation grants the Board unreviewable discretion, in many cases, to exercise the Secretary's statutory power to correct military records. But a delegation of unreviewable

17

authority to the inferior officers that make up the Board would likely offend the Appointments

Clause of the Constitution.

Under the Appointments Clause, the government's principal officers must be appointed

by the President with the advice and consent of the Senate, while inferior officers may be

appointed by the President alone, the head of an executive department, or a court.  U.S. Const.

Art. II, § 2, cl. 2.  Air Force regulations provide that the members of the Board "are appointed

and serve at the pleasure of the Secretary of the Air Force," 32 C.F.R. § 865.1, and thus, to the

extent they exercise significant governmental authority, *see Buckley v. Valeo*, 424 U.S. 1, 126 &

n.162 (1976), they must serve as inferior officers, *see Edmond v. United States*, 520 U.S. 651,

660–62 (1997).  In a recent decision, the Supreme Court held that Administrative Patent Judges

sitting on the Patent Trial and Appeal Board, who were appointed to serve as inferior officers,

may not render unreviewable final decisions in patent disputes.  *United States v. Arthrex, Inc.*,

141 S. Ct. 1970, 1981 (2021).  Rather, the Court explained, "[o]nly an officer properly appointed

to a principal office may issue a final decision binding the Executive Branch" in such

proceedings. *Id.* at 1985.[5]  But, if Plaintiffs are correct about the regulatory scheme, the inferior

officers on the Board could bind the Executive Branch to "correct an error or remove an

injustice" in a military record, 10 U.S.C. § 1552(a)(1), without any oversight from the Secretary

---

[5]  The patent judges at issue in *Arthrex* were removable only "for such cause as will promote the
efficiency of the service."  141 S. Ct. at 1982 (quoting 5 U.S.C. § 7513(a)).  And the Supreme
Court observed that circumstances in which inferior officers "serve at the pleasure of the
appointing department head" were "potentially distinguishable." *Id.* at 1984.  But when it came
to crafting a remedy, the Court struck down the portion of the statute precluding review of the
patent judges' decisions, rather than the provision providing those judges with removal
protection.  *Id.* at 1987 (plurality opinion); *id.* at 1997 (Breyer, J., concurring in the judgment in
part and dissenting in part).  The decision thus casts constitutional doubt on any statutory scheme
that grants unreviewable authority to inferior officers, regardless of how easily those inferior
officers can be removed.

or any other principal officer.  Although unique considerations might apply in this context, *Arthrex* at least suggests that such an arrangement would be unconstitutional.[6]

It might be possible to adopt a construction of the regulation that would avoid this serious constitutional concern.  Although § 865.4(*l*) states that the Board "acts for the Secretary of the Air Force and its decision is final" in certain circumstances, the following section, § 865.5, provides that "[t]he Secretary may direct such action as he or she deems appropriate on *each* case, including returning the case to the Board for further consideration," 32 C.F.R. § 865.5(a) (emphasis added).  The regulations do not explain whether the broad grant of authority to the Secretary in § 865.5 is cabined by the specific limitations on the Secretary's review power in § 865.4, or whether it's the other way around.  Broadly speaking, an "ancient interpretive principle" dictates that "the specific governs the general (*generalia specialibus non derogant*)." *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21 (2012); *see also Ex parte Crow Dog*, 109 U.S. 556, 570 (1883).  Applying that canon here, the specific delegation of the Secretary's power to the Board in § 865.4(*l*) could potentially be construed to trump the general reference to the Secretary's power of review in § 865.5(a).  On that reading, the Secretary may reverse the Board's decision or remand to the Board for further consideration under § 865.5(a) only in those cases that are subject to his review under § 865.4(*l*).

But one might also read § 865.4(*l*) as simply setting a default procedure that the Secretary is free to override as he sees fit in a given case.  By default, the Board's decision is the final action of the agency in many cases, including most denials or unanimous grants, whereas other cases go on to the Secretary for final decision.  But in "each case," regardless of which category

---

[6] An internal agency delegation, no less than a statute, can offend the Appointments Clause.  *See Lucia v. SEC*, 138 S. Ct. 2044, 2049, 2051 (2018).

that case falls into, "[t]he Secretary may direct such action as he or see deems appropriate." 32 C.F.R. § 865.5(a). That reading would be consistent with the usual rule that an agency head's delegation of her authority to subordinates is premised, at least in part, on the delegating official maintaining the power to review the decisions of the delegee, such that the ultimate responsibility for the final decision remains with the delegating official. *See Arthrex*, 141 S. Ct. at 1984 ("[I]t certainly is the norm for principal officers to have the capacity to review decisions made by inferior adjudicative officers." (internal quotation marks and citation omitted)); *see also* 39 Op. Atty. Gen. 541, 546 (1933) ("The theory underlying the vesting in an executive officer of numerous duties, varying in importance, is not that he will personally perform all of them, but rather that he will see to it that they are performed, the responsibility being his and he being chargeable with the result."). And adopting this interpretation of the regulation would also avoid the constitutional questions that Plaintiff's contrary reading raises, by making each decision of the inferior officers on the Board subject to the discretionary review of a principal officer.

The only problem is that the parties have not briefed the possible Appointments Clause problem with Plaintiff's interpretation of § 865.4(*l*), and Defendants do not seek summary judgment on that basis. And the Court is hesitant to rule based on an argument that neither party has addressed. The Court will, accordingly, deny the parties' cross-motions with respect to the regulatory issue without prejudice and will permit the parties to renew their motions for summary judgment. In their renewed motions, the parties should address the implications their respective positions under the Appointments Clause.[7]

---

[7] The Secretary's most recent delegation of the authority to review Board decisions might have its own problems. As the D.C. Circuit has held (and as explained above), § 1552 "leaves no doubt that the final decision is to be made by" the Secretary. *Miller*, 801 F.2d at 497. In other words, reviewing Board decisions is among the Secretary's powers. The Secretary is statutorily authorized to "assign such of his functions, powers, and duties as he considers appropriate to the

## C.       Arbitrary and Capricious

Because the Court lacks sufficient information to resolve Plaintiff's regulatory challenge,

it would be premature for the Court to consider whether the reversal decision was arbitrary and

capricious.  For the same reason, the Court will deny Plaintiff's motion to correct the

administrative record without prejudice.  That motion will be ripe for decision only if the Court

determines that the Acting Assistant Secretary had authority to review the Board's decision.

Only then would the Court proceed to the question whether the Acting Assistant Secretary's

decision was arbitrary and capricious.

Before moving on, however, the Court will make one final observation about the merits

to help guide the parties in further litigating this case.  In their briefing, the parties disagree about

---

Under Secretary of the Air Force and to the Assistant Secretaries of the Air Force."  10 U.S.C.
§ 9013(f).  As a general matter, "[w]hen a statute delegates authority to a federal officer or
agency, subdelegation to a subordinate federal officer or agency is presumptively permissible."
*U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004); *see also United States v.
Giordano*, 416 U.S. 505, 514 (1974) (describing as "unexceptional" the "general proposition"
that an agency head may delegate authority to a subordinate of her choosing); *Fleming v.
Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 122 (1947).  But where a statute "specifically
limit[s]" to whom an agency head may delegate authority, *Giordano*, 416 U.S. at 514, that
"affirmative evidence of a contrary congressional intent" prevails over the usual rule, *U.S.
Telecom Ass'n*, 359 F.3d at 565; *Stand Up for California! v. U.S. Dep't of the Interior*, 994 F.3d
616, 622–23 (D.C. Cir. 2021); *see also* 9 Op. O.L.C. 94, 94 (1985).  Here, the Acting Secretary
purported to temporarily delegate the authority to review Board decisions to the Principal Deputy
Assistant Secretary of the Air Force for Manpower and Reserve Affairs.  One might interpret the
statute permitting the Secretary to delegate her authority to an Assistant Secretary as implying
that the Secretary cannot delegate her authority directly to a Principal Deputy Assistant
Secretary.  *See* 10 U.S.C. § 9013(f).  But the D.C. Circuit has cautioned against reasoning by
negative implication in the context of delegations.  As the Court of Appeals has explained, the
*expressio unius* canon "is often misused" and "carries even less weight in the redelegation
context, where the statute or regulation may mention a specific official only to make it clear that
this official has a particular power rather than to exclude delegation to other officials."  *Stand Up
for California!*, 994 F.3d at 624 (internal quotation marks and citations omitted).  In any event,
Plaintiff has not raised any objection to the validity of the Acting Secretary's delegation to the
Principal Deputy Assistant Secretary, and, accordingly, the Court need not—and will not—
resolve that question on the present record.

21

how deferential the Court's review of the Secretary's decision should be.  In this regard, the D.C.

Circuit's recent per curiam decision in *McKinney v. Wormuth*, No. 20-5189, 2021 WL 3043284

(D.C. Cir. July 20, 2021), provides helpful guidance.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's motion for summary

judgment, Dkt. 21, is **DENIED**.  The motion is **DENIED** with prejudice as to the statutory

question but is **DENIED** without prejudice in all other respects.  It is further **ORDERED** that

Defendants' motion for summary judgment, Dkt. 23, is **GRANTED** in part and **DENIED** in

part.  The motion is **GRANTED** with respect to Plaintiff's claim that the Secretary lacks

statutory authority to reverse the Board but is **DENIED** without prejudice in all other respects.

And it is further **ORDERED** that Plaintiff's motion to correct the administrative record, Dkt. 30,

is **DENIED** without prejudice as premature.  Plaintiff may renew that motion if and when she

renews her motion for summary judgment on the merits.  The parties shall file a joint status

report on or before August 6, 2021, proposing next steps in this litigation, including a briefing

schedule for renewed motions for summary judgment, if appropriate.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  July 26, 2021