# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IDALIA VILLARREAL-DANCY, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE AIR FORCE; FRANK KENDALL, Secretary of the Air Force; ALEX WAGNER, Assistant Secretary of the Air Force for Manpower and Reserve Affairs,[1] <br><br> *Defendants*. | Civil Action No. 19-2985 (RDM) |

## MEMORANDUM OPINION

Plaintiff Idalia Villarreal-Dancy, a former Air Force service member, brought this action to challenge the Air Force's denial of her application to upgrade her discharge classification. In an earlier opinion and order, the Court granted in part Defendants' cross-motion for summary judgment and held that the Secretary of the Air Force (or her delegee) has the *statutory* authority to reverse a decision of the Air Force Board for Correction of Military Records. *See Villarreal-Dancy v. U.S. Dep't of the Air Force*, No. CV 19-2985, 2021 WL 3144942, at *7, *11 (D.D.C. July 26, 2021). The Court then denied without prejudice the remainder of the parties' cross-motions, concluding that additional briefing was necessary. *Id.* at *11. Plaintiff has now renewed her motion for summary judgment on the grounds that the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs (who the Government maintains was also the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the caption has been updated to reflect the names of the current Secretary of the Air Force and Assistant Secretary of the Air Force for Manpower and Reserve Affairs.

Principal Deputy Assistant Secretary) exceeded his *regulatory* authority when he reversed the

Board's decision or, in the alternative, that his decision was arbitrary and capricious.  Dkt. 41.

Defendants, in turn, have renewed their cross-motion for summary judgment.  Dkt. 45.

For the following reasons, the Court will **GRANT** Plaintiff's motion and **DENY**

Defendants' cross-motion.  The Court agrees with Defendants that the Principal Deputy

Assistant Secretary had regulatory authority to overturn the Board's decision but agrees with

Plaintiff that his decision was arbitrary and capricious.  The Court will, according, **VACATE** the

Principal Deputy Assistant Secretary's Denial Order and will **REMAND** the matter to the

Secretary of the Air Force for further proceedings consistent with this decision.  Finally, in light

of this disposition, the Court will **DENY** Plaintiff's renewed motion to correct the administrative

record as moot.  Dkt. 44.

## I.  BACKGROUND

### A.    Statutory and Regulatory Background

Congress has authorized the "Secretary of a military department [to] correct any military

record of the Secretary's department when the Secretary considers it necessary to correct an error

or remove an injustice."  10 U.S.C. § 1552(a)(1).  With an exception not relevant here, *id.*

§ 1552(a)(2), "such corrections shall be made by the Secretary acting through boards of civilians

of the executive part of that military department," *id.* § 1552(a)(1).  "Corrections under" this

provision, moreover, "shall be made under procedures established by the Secretary concerned"

and "approved by the Secretary of Defense."  *Id.* § 1552(a)(3)(A).

Consistent with this grant of authority, the Secretary of the Air Force ("Secretary") has

promulgated regulations establishing "procedures for correction of military records."  32 C.F.R.

§ 865.0.  Those regulations established the Air Force Board for Correction of Military Records

("Board"), which "operates within the Office of the Secretary of the Air Force" and is composed of "civilians in the executive part of the Department of the Air Force who are appointed and serve at the pleasure of the Secretary of the Air Force." *Id.* § 865.1.  Because the Board "is not an investigative body," it "normally decides cases on the evidence of the record." *Id.* § 865.2(c). The Board may, however, "in its discretion, hold a hearing or call for additional evidence or opinions in any case." *Id.*

The pending dispute turns, in large part, on the meaning of two provisions found in the regulations governing corrections of military records.  The first provision, 32 C.F.R. § 865.4(*l*), states as follows:

> **Final action by the Board.**  The Board acts for the Secretary of the Air Force and its decision is final when it:
>
> (1)  Denies any application (except under 10 U.S.C. 1034).
>
> (2)  Grants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not affect an appointment or promotion requiring confirmation by the Senate, and does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision.
>
> (3)  The Board sends the record of proceedings on all other applications to the Secretary of the Air Force or his or her designee for final decision.

The second, 32 C.F.R. § 865.5(a), provides that "[t]he Secretary may direct such action as he or she deems appropriate on each case, including returning the case to the Board for further consideration."  When a case is returned to the Board for reconsideration, the Secretary must issue "a brief statement of the reasons for such action," and, "[i]f the Secretary does not accept the Board's recommendation, the Secretary's decision will be in writing and will include a brief statement of the grounds for his/her final decision." *Id.* § 865.5(a).

Although the Secretary "is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Air Force," 10 U.S.C. § 9013(b), he "may assign such of his functions, powers, and duties as he considers appropriate to the . . . Assistant Secretaries of the Air Force." *Id.* § 9013(f).  In Headquarters Air Force Mission Directive 1-24, the Secretary delegated to the Assistant Secretary of the Air Force for Manpower and Reserve Affairs authority to act on at least some Board decisions.[2]  And then, in 2017, because of a vacancy in that office, the Acting Secretary of the Air Force "temporarily delegated to the Principal Deputy Assistant Secretary of the Air Force for Manpower and Reserve Affairs" the "[a]uthority to make a final decision on all applications to the Air Force Board for the Correction of Military Records," with exceptions for corrections related to security clearances and "with respect to which the Secretary of the Air Force has reserved final decision authority."  Dkt. 29-1 at 7 (Administrative Record).  That delegation "includes authority to grant or deny an application when the opposite action has been recommended by a unanimous vote of a panel of the" Board. *Id.*

## B.      Factual and Procedural History

The factual history of this case is set forth in the Court's prior memorandum opinion.  *See Villarreal-Dancy*, 2021 WL 3144942, at *3-5.  In sum, Plaintiff joined the Air Force in 1988 and "served more than ten years." *Id.* at *3.  She had a successful career "serving as a recreation specialist on various air bases." *Id.*  Her time in the service included several international tours, numerous commendations and awards, and an almost flawless performance record. *Id.*  In October 1998, however, Plaintiff "wrongfully used cocaine" and was subsequently "sentenced to

---

[2] The Secretary of the Air Force has issued various versions of this directive over the years. Defendants, however, have failed to provide the Court with a copy of the version that they claim was operative at the relevant time.  This question is discussed in greater detail below.

sixteen days of confinement, a Bad Conduct Discharge, and a reduction in grade to airman basic." *Id.* She was discharged from the Air Force in July 2000. *Id.* By all accounts, Plaintiff successfully transitioned to civilian life. *Id.* Over the years, Plaintiff worked for a photo processor, a car rental company, and the State of Alaska's Child Support Division. Dkt. 29-1 at 76. Starting in 2003, she attended college and ultimately received an "Associates Degree of Computer Accounting." *Id.* at 77. While in college, she continued to work, gave birth to her second child, made dean's list twice, and graduated while pregnant with her third child. *Id.* Since her discharge, Plaintiff has avoided any "derogatory involvement" with the legal system. *Id.* at 12. According to Plaintiff, she suffers to this day from "service-connected health and mental issues." *Id.* at 77.

In July 2015, "Plaintiff applied pro se to the Board to upgrade her discharge classification to honorable and to restore her rank." *Villarreal-Dancy*, 2021 WL 3144942, at *4. Among other things, she requested "'clemency,' including based on her successful reintegration into society following her military career." *Id.* In support of her application, she submitted over sixty pages of documentation. *Id.* To assist its consideration of Plaintiff's application, the Board received two letters: one from the Air Force Legal Operations Agency's Military Justice Division ("JAJM") and another from the Board's psychiatric advisor. *Id.* Although JAJM recommended denying Plaintiff's application on the grounds that "her allegations of error or injustice lack[ed] merit and the application [was] untimely," Dkt. 29-1 at 96, the psychiatric advisor recommended that the Board upgrade Plaintiff's "discharge to General under honorable conditions," *id.* at 101. The advisor noted Plaintiff's mental health history, including that she had suffered childhood abuse and subsequent Post-Traumatic Stress Disorder. *Id.* at 99-101. The advisor also

recognized Plaintiff's achievements since leaving the Air Force and concluded that it was "unfair to leave [Plaintiff] with the stigma of [a Bad Conduct] [D]ischarge on her record." *Id.* at 101.

After reviewing Plaintiff's application and these recommendations, the Board concluded "that partial relief [was] warranted on the basis of clemency." *Id.* at 12. The Board emphasized Plaintiff's "honorable character and notable achievements in the over 16 years since her discharge, [including] gainful employment, volunteer work, and making the Dean's list several times while pursuing her Associates Degree in Computer Science." *Id.* Because she "successfully transitioned to civilian life," the Board concluded that her Bad Conduct Discharge "no longer serves a useful purpose" and "it would be unjust for her to continue to endure the effects of the stigma." *Id.* The Board, accordingly, recommended that Plaintiff's Air Force records be corrected to show that "she was discharged with service characterized as general (under honorable conditions)." *Id.* at 13.

On October 16, 2017, the Acting Assistant Secretary of the Air Force for Manpower and Reserve Affairs ("Acting Assistant Secretary") issued a brief memorandum in which he disagreed "with the recommendation of the Board to upgrade [Plaintiff's] bad conduct discharge . . . to general (under honorable conditions)." *Id.* at 3. He first explained that he undertook a "careful review of the circumstances of this case and a thorough review of the evidence of record." *Id.* Then, after summarizing the Board's decision, he explained:

> I believe the panel's recommendation is inconsistent with Board actions in similar cases. Specifically, in the relatively few cases where the Board recommended upgrading a BCD [Bad Conduct Discharge], a punitive discharge which is the result of a criminal conviction, the applicants in those cases provided evidence of sustained contributions to their community in the many years since their punitive discharge. Most of the character based evidence provided by the applicant relates to her accomplishments prior to her 1998 court-martial. While I congratulate the applicant on a successful post-service transition, the fact remains she received a punitive discharge as a result of a general court-martial conviction for drug abuse. Contrary to the Board's

recommendation, I do not believe the evidence in this case is sufficient to conclude the applicant's post-service activities are so meritorious that her BCD should be upgraded on the basis of clemency.

*Id.* The Acting Assistant Secretary, therefore, denied "the applicant's requests" and directed the Executive Director of the Board to "notify the applicant" of his decision. *Id.*

Two years later, Plaintiff filed this lawsuit challenging the Acting Assistant Secretary's determination under the Administrative Procedure Act ("APA"). *Villarreal-Dancy*, 2021 WL 3144942, at *1, *5. In an earlier phase of the litigation, the parties filed cross-motions for summary judgment, and Plaintiff moved to correct the administrative record. The Court granted Defendants' cross-motion in part. *Id.* at *1. It rejected Plaintiff's argument that the Secretary's delegee exceeded his statutory authority by denying her application, relying on binding D.C. Circuit precedent to the contrary. *Id.* at *6 (citing *Miller v. Lehman*, 801 F.2d 492 (D.C. Cir. 1986)). The Court then turned to Plaintiff's argument that the Air Force violated its own regulations, which, on her reading, made the Board's decision "final" and unreviewable by the Secretary (or his delegee). *Id.* at *7 (quoting 32 C.F.R. § 865.4(*l*)). The Court determined that, "[b]y focusing on whether the Secretary" violated that regulation, "the parties' arguments about how to interpret 32 C.F.R. § 865(*l*)(2) miss[ed] a potentially significant constitutional problem with Plaintiff's preferred reading." *Id.* at *8. The Court was concerned that, if the Board's decision was unreviewable by the Secretary, that might run afoul of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2., under the recent Supreme Court case *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021). The Court also highlighted a possible "construction of the regulation that would avoid this serious constitutional concern." *Villarreal-Dancy*, 2021 WL 3144942, at *9. Because the parties failed to brief those issues, the Court denied the remainder of the motions for summary judgment without prejudice and allowed the parties to renew them, explaining that they should address the Appointments Clause issue. *Id.* at *10. The Court also

determined that Plaintiff's arbitrary and capricious challenge was therefore premature, as was her motion to correct the administrative record.  *Id.* at *10-11.

Plaintiff has now renewed her motion for summary judgment, Dkt. 41, and Defendants have cross-moved for summary judgment, Dkt. 45.  Plaintiff has also renewed her motion to correct the administrative record, Dkt. 44, which Defendants oppose, Dkt. 47.  The case is now ripe for decision.

## II.  LEGAL STANDARD

The APA instructs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," as well as agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2).  In an APA case, summary judgment "serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'"  *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (quoting *Cayuga Nation v. Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019)).  In such cases, "the district judge sits as an appellate tribunal," and "the entire case on review is a question of law."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks omitted).

The parties have debated the extent to which the Court should defer to the Acting Assistant Secretary's decision.  *Compare* Dkt. 45-1 at 18, *with* Dkt. 49 at 8.  In *McKinney v. Wormuth*, 5 F.4th 42 (D.C. Cir. 2021), the D.C. Circuit explained that judicial review of decisions of Boards for Correction of Military Records is "unusually deferential," both because of "the Secretary's broad statutory discretion" and because "judges are not given the task of running" the Armed Forces.  *Id.* at 45-46 (per curiam) (alteration and citations omitted).  In light

8

of that deference, the Court "asks only if the [Acting Assistant Secretary's] decisionmaking process was *deficient*, not whether [his] decision was *correct*." *Id.* (alteration omitted).

## III.  ANALYSIS

The pending cross-motions for summary judgment pose three interrelated questions.  The Court must first determine whether the Secretary's delegee exceeded his regulatory authority by reversing the Board's decision.  If the answer to that question is "yes," then the Court must next address whether a regulation that precludes the Secretary (or her delegee) from reviewing the decisions of subordinate government officials, who were not appointed by the President with the advice and consent of the Senate, violates the Appointments Clause of the Constitution.  But if the answer to the first question is "no," then the Court must address Plaintiff's alternative argument that the Denial Order was arbitrary and capricious.  As explained below, the Court concludes: (1) the Secretary's delegee did not exceed his regulatory authority by reversing the Board's decision; and so (2) the Court need not address the Appointments Clause issue; but (3) the Denial Order failed to provide a reasoned justification for reversing the Board's decision. The Court will, according, set the Denial Order aside and remand the matter to the Secretary of the Air Force for further proceedings consistent with this decision.

### A.    Regulatory Authority

Plaintiff argues that the Acting Assistant Secretary (or Principal Deputy Assistant Secretary) "exceeded his authority under applicable Air Force regulations by purporting to overturn the Board's unanimous determination that [she] is entitled to a discharge upgrade." Dkt. 41-1 at 20.  In particular, she maintains that 32 C.F.R. § 865.4(*l*) precludes further administrative review of a Board decision that either denies an application to correct a military record on grounds of error or injustice or "[g]rants any application in whole or part when [1] the

9

relief was recommended by the official preparing the advisory opinion, [2] was unanimously agreed to by the panel, . . . [3] does not affect an appointment or promotion requiring confirmation by the Senate, and [4] does not affect a matter for which the Secretary . . . or his or her delegee has withheld decision authority or required notification before final decision." 32 C.F.R. § 865.4(*l*)(1)-(2)); *see* Dkt. 41-1 at 20-21. The parties agree that the Board granted Plaintiff's application in part and that the first three criteria specified in § 865.4(*l*)(2) are satisfied here: the relief was recommended by the psychiatric advisor, the panel was unanimous, and the relief at issue—upgrading Plaintiff's discharge—did not require Senate confirmation.[3] The parties disagree, however, regarding the fourth criteria: that is, whether the Secretary or her delegee withheld decision authority.

In Plaintiff's view, the issue is straightforward. No rule, memorandum, or directive withholds decision-making authority from the Board. Defendants, in contrast, argue that, in a 2012 Directive, the Secretary delegated final decision-making authority to the Assistant Secretary. Dkt. 45-1 at 19-22. According to Defendants, that Directive "delegate[d] to the Assistant Secretary 'the authority to make a final decision on all Air Force Board for Correction of Military Records [matters] relating to the administration of [discharge review boards] and for correcting any military record of the Military Department' with two exceptions not pertinent here." Dkt. 45-1 at 20 (citing—but not quoting—Ex. A.). Defendants continue: "This included '[t]he authority to deny an application for correction of military records when correction has been recommended by unanimous vote of a panel of the board.'" *Id.* (quoting ¶ A.1.141.1.2).

---

[3] As noted above, the JAJM recommended denying Plaintiff relief while the psychiatric advisor recommended granting relief. Defendants do not argue that the contrary opinion of the JAJM takes Plaintiff's case out of § 865.4(*l*)(2). *See Villarreal-Dancy*, 2021 WL 3144942, at *8 n.4.

Relying on these delegations, Defendants argue that "the Secretary effectively withheld grant authority from the Board, meaning its decision was not 'final' under § 865.4(*l*)(2).  *Id.*

It is difficult to catalogue all of the errors or omissions in Defendants' line of argument. To start, the language that Defendants quote appears nowhere in the 2008 Directive they attach to their brief as Exhibit A.  But things get worse from there.  What the Directive that Defendants did file along with their brief actually says is that the delegation of authority to the Assistant Secretary for Manpower and Reserve Affairs does *not* include "the authority to deny an application for correction of military record(s) when correction has been recommended by a unanimous or majority vote of the Board of Correction of Military Records."  Dkt. 45-2 at 11 (¶ A.1.40.3).  That is, according to the Directive that Defendants filed along with their cross-motion for summary judgment, the Assistant Secretary expressly *lacked* the authority that he purported to exercise here.

Defendants' reply brief does little to rescue this problem.  In a puzzling sentence, they contend that the version of the Directive that was attached to their motion was provided merely "to clarify[] what authorities the Assistant Secretary of the Air Force for Manpower and Reserves could further delegate and the authorities that the Secretary of the Air Force . . . retained at his or her level."  Dkt. 51 at 5.  "It did not," Defendants continue, "change any other language that the Government relied upon in its previous filings with this court."  *Id.*  Putting aside the confusion caused by Defendants' decision to submit a version of the Directive to the Court that expressly precluded the Assistant Secretary from exercising the authority at issue here, it appears that Defendants' position is that the 2008 version of the Directive, which they submitted to the Court, was superseded by a 2012 version of the Directive, which according to Defendants removed the limitation on the Assistant Secretary's authority to review unanimous

Board decisions.  If that were the case, Defendants would have a point.  But, here again, they fall short of meeting their burden.  Although they have repeatedly quoted from the 2012 version of the Directive in their briefing, they have never provided the Court or Plaintiff with a copy of that version of the Directive—despite receiving notice from the Court and Plaintiff of this glaring omission, *see Villarreal-Darcy*, 2021 WL 3144942, at *3 n.2; Dkt. 48 at 6 n.1.  The Court and Plaintiff are simply asked to take Defendants' word for what the Directive said in 2012, without the opportunity to review the relevant language in context.  Defendants' failure to provide a copy of what they claim was the operative delegation is particularly puzzling given that, without explanation, they provided the Court with a copy of what they now say was an outdated version of the delegation.

The Court has located an updated version of the Directive online, which does include language that Defendants quote from ¶ A1.141.1.2.  *See* https://static.e-publishing.af.mil /production/1/saf_mr/publication/hafmd1-24/hafmd1-24.pdf (last visited Sept. 26, 2022); *see also* Dkt. 45-1 at 20.  But that version is dated January 28, 2019, and it "[s]upersde[d]" a version of the Directive issued in June 2018.  Because the Secretary's delegee issued his decision in this matter in October 2017, the Court is still left without any documentary (or other evidentiary) basis for concluding that the version of the ever-evolving Directive that was in place at the relevant time tracked the 2019 version, the 2008 version, or the (different) language that Defendants quoted in the briefs that they filed in support of their prior motion for summary judgment.  *See* Dkt. 22 at 16-17; Dkt. 26 at 10-12; *see also* Dkt. 51 at 5.

Were it not for another delegation contained in the Administrative Record, the Court would be inclined to grant summary judgment in favor of Plaintiff on the ground that, despite multiple opportunities to clarify the record, Defendants have failed to offer any evidence

supporting their contention that the (Acting) Assistant Secretary was authorized "to deny an application for correction of military record(s) when correction has been recommended by unanimous or majority vote of a panel of the Board of Correction of Military Records," Dkt. 45-2 at 11 (¶ A1.40.3).  On January 26, 2017, however, after the 2008 Directive was issued and before the Acting Assistant Secretary issued his decision in this case, the Acting Secretary of the Air Force issued a delegation to the Principal Deputy Assistant Secretary of "[a]uthority to make a final decision on all applications to the Air Force Board for the Correction of Military Records submitted under . . . 10 U.S.C. § 1552, except those seeking" the correction of records affecting security clearances or "with respect to which the Secretary of the Air Force has reserved final decision authority."  Dkt. 29-1 at 7.  Significantly, "[t]his temporary delegation include[d] authority to . . . deny an application when the opposite action ha[d] been recommended by a unanimous vote of a panel of the Board for Correction of Military Records."  *Id.*  The delegation remained "in effect until the confirmation and appointment of an Assistant Secretary. . . for Manpower and Reserve Affairs," *id.*, which apparently did not occur until November 2017, *see Shon J. Manasco*, Air Force, https://www.af.mil/AboutUs/Biographies/Display/Article/1391994/shon-j-manasco/.[4]  The 2017 delegation, accordingly, was sufficient to overcome any earlier

---

[4]  Plaintiff argues that Defendants have failed to establish that at the time of the Denial Order, Daniel Sitterly was the Principal Deputy Assistant Secretary, the office with the delegated authority under the 2017 delegation.  *See* Dkt. 41-1 at 42-43; Dkt. 48 at 15-17; *see also* Dkt. 29-1 at 7.  Defendants respond by citing Mr. Sitterly's online government biography, which states that Sitterly was Acting Assistant Secretary from 2014-2017 and Principal Deputy Assistant Secretary from 2014-present.  *See* Dkt. 45-1 at 28 & n.10 (citing *Daniel R. Sitterly*, Air Force, https://www.af.mil/About-Us/Biographies/Display/Article/108357/daniel-r-sitterly/).  The website states that it was "[c]urrent as of December 2017," and the Denial Order was issued October 2017, Dkt. 29-1 at 3.  "Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."  *See, e.g., Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (collecting cases).  Plaintiffs have offered no reason to suspect that the website is incorrect on the

limitation on the Secretary's delegation to deny applications to correct military records following a contrary recommendation from the Board, and was sufficient to cloak the Principal Deputy Assistant Secretary with whatever authority the Secretary had to grant or deny applications "when the opposite action ha[d] been recommended by a unanimous vote of a panel of the Board," Dkt. 29-1 at 7.

It is far more difficult, however, to construe the 2017 delegation as an order or directive "withh[olding] decision authority" from the Board over cases in which the Board has unanimously agreed to correct the applicant's military record.  *See* 32 C.F.R. § 865.4(*l*)(2).  For one thing, the 2017 delegation could only delegate an authority that the Secretary had at that time, and Defendants point to no order or directive in which the Secretary "withheld decision authority" from the Board at the relevant time.  Had the Acting Secretary intended to "with[o]ld" decision-making authority from the Board in 2017, moreover, she could have—and presumably would have—done so on far clearer terms.  Finally, and perhaps most significantly, no one doubts that the Board continued to have authority to issue final decisions "when relief was recommended by the official preparing the advisory opinion," and the Board "unanimously agreed" to grant relief.  § 865.4(*l*)(2).  The question is not whether the Board retained that authority but, rather, whether the Secretary (or the Principal Deputy Assistant Secretary) had the authority to set aside an otherwise final decision.  That is, had the Principal Deputy Assistant Secretary done nothing, the Board's decision would have finally—and forever—resolved the

---

relevant information.  They point to potential inconsistencies regarding the exact dates that Sitterly served as Acting Assistant Secretary, Dkt. 48 at 15-16, but have given the Court no reason to doubt that Sitterly was the Principal Deputy at the relevant time.  In any event, because the Court is vacating the Denial Order on arbitrary and capricious grounds, *see infra* Part III-B, it is ultimately inconsequential to the disposition of this case whether Sitterly was or was not the officer with delegated authority.

issue.  Understood in this light, one cannot reasonably say that the 2017 delegation "*withheld* decision authority" from the Board.  Instead, at most, it delegated to the Principal Deputy Assistant Secretary whatever authority the Secretary had to set aside a decision that, absent such intervention, would have remained final and binding.

Defendants suggest an alternative argument that better reflects the interrelated workings of the governing regulations and delegations.  As Defendants note, the governing regulations confer upon the Secretary the authority to "direct such action as he or she deems appropriate on each case, including returning the case to the Board for further consideration."  32 C.F.R. § 865.5(a); *see* Dkt. 45-1 at 11, 20, 22; Dkt. 51 at 5, 9.  Reasonably construed, that provision confers on the Secretary the authority to take any action "he or she deems appropriate" with respect to any application submitted to the Board, including reversing a unanimous Board decision to grant relief.  Read in this manner, § 865.4(*l*) sets "a default" of Board finality in certain cases, but § 865.5 clarifies that "the Secretary is free to override" that otherwise final decision "as he sees fit in a given case."  *Villarreal-Dancy*, 2021 WL 3144942, at *9.  In other words, "[b]y default, the Board's decision is the final action of the agency in many cases, including most denials or unanimous grants, whereas other cases go on to the Secretary for final decision."  *Id.*  "But in 'each case,' regardless of which category that case falls into, '[t]he Secretary may direct such action as he or she deems appropriate.'"  *Id*. (quoting § 865.5(a)).

Plaintiff premises her contrary reading of the regulations on the contention that, at least for purposes of § 865.4(*l*), "final" means "conclusive" and "unreviewable" by others within the agency.  *See* Dkt. 41-1 at 21.  But that convention ignores the broad authority of the Secretary (and her delegees) to oversee the operations of the Air Force and reads too much into the word "final."  To start, § 865.5(a) imposes no limitation—express or implied—on the Secretary's

authority to take whatever action she deems appropriate in a particular case.  That broad

authority, moreover, is consistent with the D.C. Circuit's observation that "the Secretary is by no

means a cipher in the process of correcting [military] records."  *Miller*, 801 F.2d at 497.  It is

also consistent with the statute creating the office of Secretary of the Air Force, which confers

upon the Secretary the "authority necessary to conduct[] *all* affairs of the Department of the Air

Force."  10 U.S.C. § 9013(b) (emphasis added).  It is consistent with the fact that Board

"operates within the Office of the Secretary of the Air Force."  32 C.F.R. § 865.1.  And it is

consistent with the "norm" in the executive branch of government that "principal officers . . .

have the capacity to review decisions made by inferior adjudicative officers" or employees.

*Arthrex*, 141 S. Ct. at 1984; *see also Villareal-Darcy*, 2021 WL 3144942, at *9; 39 Op. Att'y

Gen. 541, 546 (1933) ("The theory underlying the vesting in an executive officer of numerous

duties, varying in importance, is not that he will personally perform all of them, but rather that he

will see to it that they are performed, the responsibility being his and he being chargeable with

the result.").  In short, it is the rare exception, and certainly not the rule, that the head of a

department or her delegee lacks authority to review and alter decisions rendered by subordinates,

and, here, the governing statutes and regulations reaffirm that authority.

Plaintiff's principal counterargument turns on the faulty premise that "final" necessarily

means "unreviewable."  That premise is incorrect, and, indeed, other regulatory regimes

expressly provide for discretionary review of otherwise "final" decisions.  A party "may seek

review of the *final* determination" of the Copyright Claims Board, for example, by appealing to

"the Register of Copyrights."  37 C.F.R. § 231.1 (emphasis added).  Likewise, "[a] party

aggrieved by a *final order* of an administrative judge under [43 C.F.R.] § 4.352 . . . may appeal

to the Board [of Indian Appeals]."  43 C.F.R. § 4.356(a) (emphasis added).  And "[t]he Secretary

[of Veterans Affairs] shall review each *final* determination [of the Under Secretary for Benefits]."  38 U.S.C. § 3696(i)(2)(A)(i) (emphasis added).  The APA even contemplates that, "[e]xcept as otherwise expressly required by statute, agency action otherwise final *is final*" for the purpose of judicial review "whether or not there has been presented or determined an application for . . . any form of reconsideration, or . . . for an appeal to superior agency authority."  5 U.S.C. § 704 (emphasis added).

Understood in this light, 32 C.F.R. § 865.4(*l*)(2) is best understood to set a default rule that treats certain Board decisions as final.  In most cases, that will end the matter.  But it does not divest the Secretary (or her delegee) of authority under § 865.5(a) to take any "action he or she deems appropriate" in a particular case.  This regulatory structure promotes efficiency by providing the Board with authority to render "final" decisions in most cases, relieving the Secretary of the duty to review each and every decision before it can become final.  And, at the same time, it preserves the Secretary's authority and discretion to ensure that the affairs of the Department of the Air Force are administered fairly and in a manner that is consistent with the Department's mission.  This understanding also vests ultimate accountability in an official who is appointed by the President and confirmed by the Senate.[5]  So construed, § 865.4(*l*) grants the Board the authority, at least at times, to issue "final" decisions, and those decisions are binding and dispositive, unless and until the Secretary (or her delegee) exercises her discretion to intervene and to set aside the decision.

---

[5] As the Court noted in its prior opinion in this case, the Supreme Court has "at least suggest[ed] that" it "would be unconstitutional" for inferior officers to "bind the Executive Branch." *Villarreal-Dancy*, 2021 WL 3144942, at *9.  The Court's decision today is not premised on the Appointments Clause or even the canon of constitutional avoidance.  The Court does, however, rely upon both the "norm" that "principal officers . . . have the capacity to review decisions made by" subordinates, *Arthrex*, 141 S. Ct. at 1984, and the statutory and regulatory provisions that, if given their plain meaning, reinforce that norm, *see* 10 U.S.C. § 9013(b); 32 C.F.R. § 865.5(a).

The Court recognizes that, on rare occasion, either Congress or an agency may conclude that it is important to insulate a subordinate official or employee's decision from further review within an agency.  The office of an independent counsel might be created, for example, to avoid "conflicts of interest that could arise in situations when the Executive Branch is called upon to investigate its own high-ranking officers."  *Morrison v. Olson*, 487 U.S. 654, 677 (1988); *see also In re Grand Jury Investigation*, 916 F.3d 1047, 1050-51 (D.C. Cir. 2019).  Here, however, Plaintiff identifies no such interest, nor can the Court discern one.  To the contrary, Plaintiff concedes that the statute and regulations were designed to "respond[] to a growing backlog of record correction requests by establishing a reliable and efficient framework for administrative review."  Dkt. 41-1 at 42.  The Court agrees that the Air Force created this bifurcated system of review for efficiency reasons.  In most cases in which the Board denies an application or unanimously grants one, it is unlikely the Secretary will decide to weigh in.  In cases in which the Board is split, however, the rule ensures that such decisions come across the Secretary's desk for review.  And, in all other cases, the rule preserves the Secretary's authority to intervene in a particular case as she "deems appropriate."  § 865.5(a).  Nothing about this regulatory structure undermines the efficiency rationale that Plaintiff trumpets.

Plaintiff further argues that reading § 865.5(a) to preserve the Secretary's ability to review even unanimous grants of relief by the Board is untenable because "neither applicants nor courts would ever know when a correction decision was actually final."  Dkt. 41-1 at 41.  There is some force to this argument.  It is hardly ideal that veterans who succeed at the Board-level are left to wonder whether the Secretary might revoke the Board's determination at some unspecified time.  For that reason, other regulatory regimes often specify a timeline for review of a decision by the agency head.  *See, e.g.*, 20 C.F.R. § 655.655(h) ("The Secretary's final decision

shall be issued within 180 calendar days from the date of the notice of intent to review.").  But, as explained, "[t]he mere possibility that an agency might reconsider . . . does not suffice to make an otherwise final agency action nonfinal," *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012); *see also National Environmental Development Association's Clean Air Project v. E.P.A.*, 752 F.3d 999, 1006 (D.C. Cir. 2014) ("An agency action may be final even if the agency's position is 'subject to change' in the future.") (internal citation omitted), and 32 C.F.R. § 865.7 directs the Executive Director of the Board to "send decisions requiring corrective action to the Chief of Staff, U.S. Air Force, for necessary action," § 865.7(a), thus creating an incentive for the Secretary to act, if at all, with dispatch.

Plaintiff also argues that, "if the Air Force Secretary could invoke 32 C.F.R. § 865.5(a) to review directly any Board denial, that would conflict with 10 U.S.C. § 1553a, which provides that upon an applicant's request, the Secretary of Defense—not the Air Force Secretary— 'conduct[s] a final review' of the 'findings and decisions of' the Correction Board whenever a correction 'request . . . was not granted.'" Dkt. 41-1 at 41 n.14 (quoting 10 U.S.C. § 1553a). Section 1553a was enacted in December 2019, over two years after the Air Force action at issue here, and it thus has little, if any, bearing on this case. *Id.* at 22 n.8.  Nor, in any event, is the Court persuaded that § 1553a precludes the Secretary of the Air Force from reviewing Board decisions or limits the circumstances when she may do so.  For one thing, review under § 1553a is available only "[u]pon the request of a petitioner," and, accordingly, the provision does not speak to circumstances—like those present here—when the Board grants relief to the applicant. 10 U.S.C. § 1553a(b).  And, beyond that, review is available only after the petitioner has "exhausted all remedies available under sections 1552 and 1553," *id.* at § 1553a(c)(1), which would seem to include any review permitted under 32 C.F.R. § 865.5(a). There is therefore no

conflict:  Under the new statutory provision, an applicant may seek the Secretary of Defense's review after the Air Force Secretary considers the application.

Finally, Plaintiff argues that the Court's reading of 32 C.F.R. § 865.4(*l*) and § 865.5(a) conflicts with the anti-surplusage canon.  According to Plaintiff, if the Secretary can always review Board cases, then there was no need in § 865.4(*l*)(2) to specify that the Secretary can withhold decisional authority on matters.  Dkt. 41-4 at 41-42.  But that argument fails to appreciate the difference between a Board decision that is treated as "final" unless set aside by the Secretary, and a recommendation that is not, even by default, final and that requires the Secretary to act, one way or the other.

The Court, accordingly, holds that the Principal Deputy Assistant Secretary had discretion to take "such action as he . . . deem[ed] appropriate" on Plaintiff's application for correction of her military record.  That, however, does not end the matter.

## B.    Arbitrary and Capricious Challenge

Plaintiff argues in the alternative that "[e]ven if the Acting Assistant Secretary [or Principal Deputy Assistant Secretary] had authority to override the Board's decision, the Denial Order should be set aside because it contains glaring inconsistencies and fails to address several important issues raised in [her] petition."  *Id.* at 44.  The Court agrees with Plaintiff that the Denial Order "rejected the Board's decision without providing a reasoned justification for doing so."  *Id.*  The Court therefore vacates the Denial Order as "arbitrary and capricious" pursuant to 5 U.S.C. § 706(2).

"The Administrative Procedure Act requires that agency decisionmaking be both reasonable and reasonably explained."  *Ind. Boxcar Corp. v. R.R. Ret. Bd.*, 712 F.3d 590, 591 (D.C. Cir. 2013); *see also* 5 U.S.C. § 706(2)(A); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) ("We have frequently reiterated that an agency must cogently explain why it has exercised discretion in a given manner. . . ."). The Court, moreover, "must judge the propriety of [the agency's] action solely by the grounds invoked by the agency," *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and may not consider arguments pressed for the first time in litigation. Finally, the Court notes that its review is "unusually deferential" because the Secretary is vested with "broad statutory discretion" to "correct or remove an injustice." *McKinney*, 5 F.4th at 45-46 (quoting 10 U.S.C. § 1552(a)). *But see Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) ("The Secretary's broad discretion in administering the correction of military records does not obviate the APA's requirement that administrative actions be supported by reasoned decisionmaking." (citation and internal quotation marks omitted)).

Even under this deferential standard, the Court concludes that the Principal Deputy Assistant Secretary's Denial Order fails the test of "reasoned decisionmaking." *See McKinney*, 5 F.4th at 45. The Denial Order can be described in strikingly few words. The first sentence of the Order explains that the Principal Deputy Assistant Secretary reviewed the case and evidence and disagreed with the Board's recommendation. Dkt. 29-1 at 3. The next three sentences describe the Board's decision. *Id.* The remainder of the analysis is as follows:

> I believe the panel's recommendation is inconsistent with Board actions in similar cases. Specifically, in the relatively few cases where the Board recommended upgrading a [Bad Conduct Discharge], a punitive discharge which is the result of a criminal conviction, the applicants in those cases provided evidence of sustained contributions to their community in the many years since their punitive discharge. Most of the character based evidence provided by the applicant relates to her accomplishments prior to her 1998 court-martial. While I congratulate the applicant on a successful post-service transition, the fact remains she received a punitive discharge as a result of a general court-martial conviction for drug abuse. Contrary to the Board's recommendation, I do not believe the evidence in this case is sufficient to conclude the applicant's post-service activities are so meritorious that the [Bad

Conduct Discharge] should be upgraded on the basis of clemency. Therefore, I
deny the applicant's requests.

*Id.* That reasoning is insufficient on several levels.

First, the Denial Order states that in prior cases in which the Board recommended
upgrading a discharge, there was evidence of substantial contributions to the community in
the many years since.  But the decision fails to identify any such prior case; fails to describe the type
of evidence of "sustained contributions to [the applicants'] communit[ies]" that was sufficient in
the prior cases; and fails to explain why, in the Principal Deputy Assistant Secretary's view,
Plaintiff's many years of community contributions failed to stack up against those comparators.
*See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405-06 (D.C. Cir. 1995) ("But we cannot determine
whether the decision making process was deficient until we are allowed to understand what that
process was.").   The Court, accordingly, "is left to guess why the [Principal Deputy Assistant
Secretary] made that conclusion."  *Annicelli v. Kendall*, No. 1:20-cv-02647, 2022 WL 951268, at
*7 (D.D.C. Mar. 30, 2022).

This error is compounded by the fact that Plaintiff, by contrast, has cited several
decisions in which the Board granted relief based on "post-service activities and
accomplishments," a "stable and productive" transition to post-service life, and "a stable and
productive life" as a painter and father of three children. Dkt. 41-1 at 46-47, 47 n.16.  Because
the Denial Order failed to identify any comparator whose post-service conduct was more
exemplary than Plaintiff's, the Court cannot even hazard a guess about whether the Principal
Deputy Assistant Secretary considered these or other comparators and, if so, whether he had
sound reasons for concluding that Plaintiff's case was different.  *See Jicarilla Apache Nation v.
U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (explaining that, while courts "do
not require an agency to grapple with every last one of its precedents," they "have never

approved an agency's decision to completely ignore relevant precedent"); *Bush-Quayle '92 Primary Comm., Inc. v. FEC*, 104 F.3d 448, 454 (D.C. Cir. 1997) (similar).

Defendants argue that the Principal Deputy Assistant Secretary's failure to cite any precedent can be excused because he relied on a memorandum from Mark Teskey, then-Director of the Air Force Review Boards Agency. Dkt. 45-1 at 14 n.5, 30-31. They claim that Teskey "gave a broad cultural statement that a grant is inconsistent with general board *practice*," and that the Assistant Secretary could rely on Teskey's expertise. *Id.* at 24-25. The Court is unpersuaded. As Plaintiff notes, this is a *post hoc* rationalization not included in the Denial Order, *see id.* at 45, and, in any event, the Teskey Memorandum *also* fails to cite any precedent or to explain what type of "sustained contributions to the community" over "many years" warrants relief, Dkt. 29-1 at 4-5. The Court is unable to determine whether the Principal Deputy Assistant Secretary or Mr. Teskey actually reviewed any cases in making their decisions, much less whether those cases are distinguishable from this case.

The Principal Deputy Assistant Secretary's next sentence in the Denial Order is also unsupported. He wrote that "[m]ost" of Plaintiff's character evidence related to her pre-1998 accomplishments, rather than post-discharge conduct. Dkt. 29-1 at 3. That statement finds no basis in the record. The Board noted that "the applicant provide[d] a letter discussing her honorable character and notable achievements in the over 16 years *since* her discharge," which included evidence of "gainful employment, volunteer work, and making the Dean's list several times while pursuing her Associates Degree in Computer Science," as well as "character reference letters attesting to her honorable character" and "no evidence of any derogatory involvement with any civil authorities in the over 16 years *since* her discharge." *Id.* at 12 (emphases added). The Secretary's decision failed "reasonably [to] reflect upon the information

contained in the record and [to] grapple with contrary evidence." *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017).

Defendants retort that the Principal Deputy Assistant Secretary did consider the entire record and that, if he erred in stating that the bulk of the character evidence was pre-discharge, any such error was harmless. Dkt. 45-1 at 35. Taking "due account . . . of the rule of prejudicial error," 5 U.S.C. § 706, the Court is persuaded that the error "prejudiced" Plaintiff, *see Jicarilla*, 613 F.3d at 1121; *see also Shinseki v. Sanders*, 556 U.S. 396, 406-412 (2009). The Principal Deputy Assistant Secretary's decision, at a minimum, suggests a lack of familiarity with (or lack of consideration of) the significant evidence Plaintiff proffered regarding her post-discharge accomplishments. The Court expresses no view about whether that conduct merited relief; it did, however, merit consideration—particularly given the discussion of Plaintiff's "notable achievements in the over 16 years since her discharge" contained in the Board's decision, Dkt. 29-1 at 12, which the Principal Deputy Assistant Secretary overturned, *id.* at 3.

 The Court, accordingly, concludes that the Denial Order failed to provide a reasoned explanation for overturning the Board's decision and that, pursuant to 5 U.S.C. § 706, the decision must be "set aside." The Court will, however, remand the matter to the Secretary of the Air Force for further consideration in light of this decision.

## C.     Motion to Amend the Administrative Record

Finally, about two months after filing her renewed motion for summary judgment, Plaintiff also filed a renewed motion to correct the administrative record. Dkt. 44. Plaintiff argues that "the administrative record properly includes" a "full, 90-page version of 'Exhibit B,' a set of promotion records, reenlistment forms, and similar files that the [Board] obtained in response to Plaintiff's discharge-upgrade request and listed as among the evidence it considered

in reaching its decision." *Id.* at 1. "Rather than including all 90 pages in the administrative record," however, "the Government has included only a five-page excerpt." *Id.* Plaintiff requests that the Court "order the Government to file a corrected record that includes it." *Id.* The Government responds that the additional "pages sought for admission by Plaintiff were not considered by the agency and were not required to be," and therefore "they should not be included as part of the administrative records." Dkt. 47 at 5.

The Court need not resolve this dispute. It is vacating the Denial Order and remanding to the Secretary. Should the Secretary decide to revisit the merits of Plaintiff's application on remand and decide, once again, to overturn the Board's decision, and should Plaintiff challenge that decision, the Secretary will need to assemble a new administrative record. Plaintiff's motion to amend the administrative record is therefore denied as moot.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Plaintiff's renewed motion for summary judgment, Dkt. 41; will **DENY** Defendants' cross-motion for summary judgment, Dkt. 45; will **VACATE** the Denial Order and will **REMAND** the matter to the Secretary of the Air Force for further proceedings consistent with this decision; and will **DENY** Plaintiff's renewed motion to correct the administrative record, Dkt. 44, as moot.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  September 27, 2022